1  Julie E. Schwartz, Bar No. 260624
   JSchwartz@perkinscoie.com
2  PERKINS COIE LLP
   3150 Porter Drive
3  Palo Alto, CA 94304-1212
   Tel.: (650) 838-4300
4  Fax: (650) 838-4350

5  Todd M. Hinnen, *pro hac vice*
   THinnen@perkinscoie.com
6  John R. Tyler, *pro hac vice*
   RTyler@perkinscoie.com
7  PERKINS COIE LLP
   1201 Third Ave. Suite 4900
8  Seattle, WA 98101
   Tel.: (206) 359-8000
9  Fax: (206) 359-9000

10 Attorneys for Google Inc.

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15                                    | Case No. 3:16-mc-80263

16                                    | **GOOGLE INC.'S  NOTICE OF**
                                      | **MOTION AND MOTION FOR DE**
17                                    | **NOVO DETERMINATION OF**
                                      | **DISPOSITIVE MATTER REFERRED**
18 In the Matter of the Search of Content Stored | **TO MAGISTRATE JUDGE**
   at Premises Controlled by Google Inc. and
19 Further Described in Attachment A   | **[CIVIL LOCAL RULES 7-2, 72-3]**

20
                                      | Judge:        TBD
21                                    | Date:         June 22, 2017
                                      | Time:         9:30 a.m.
22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 22, 2017, at 9:30 a.m., or as soon thereafter as this matter may be heard, Non-Party Google Inc. ("Google") will, and hereby does, move the Court for a De Novo Determination of Dispositive Matter Referred to Magistrate Judge. This Motion is based on this Notice of Motion and Motion, Google's Objections, the Memorandum of Points and Authorities in Support, Google's Motion to Quash or Amend Search Warrant, the papers filed in support of and in opposition to both motions, and all other materials in the record.

Pursuant to 28 U.S.C. § 636(b)(1)(B),(C) and Civil Local Rules 7-2, 72-3, Google objects to the Amended Order and Memorandum Decision denying Google's motion to quash or amend a search warrant. *In the Matter of the Search of Content that Is Stored At Premises Controlled by Google*, No. 3:16-mc-80263, 2017 WL 1487625 (N.D. Cal. Apr. 25, 2017) (hereinafter, "Decision"). Google objects for the reasons discussed below in Google's Objections and Memorandum in Support.


DATED: May 3, 2017                    **PERKINS COIE LLP**


By: */s/ Todd M. Hinnen*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    Todd M. Hinnen, *pro hac vice*
    THinnen@perkinscoie.com

Attorneys for Google Inc.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................. 4

II.  FACTUAL BACKGROUND ........................................................................................... 6

III. ARGUMENT .................................................................................................................... 6

    A.   The SCA's warrant provision does not authorize searches of data stored extraterritorially ............................................................................................... 7

    B.   Requiring a provider to execute a warrant to search and seize data outside the United States is an impermissible extraterritorial application of the SCA ................................................................................................................... 9

        1.   The SCA's focus is protection of the privacy of electronic communications ................................................................................. 10

        2.   Assisting in the execution of an SCA warrant is conduct relevant to its focus ................................................................................................ 11

        3.   The Court should decline to weigh policy interests Congress has not yet considered ......................................................................... 13

IV.  CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Benz v. Compania Naviera Hidalgo, S.A.,*
    353 U.S. 138 (1957) ................................................................................................. 15

*Connecticut Nat. Bank v. Germain,*
    503 U.S. 249 (1992) ................................................................................................. 13

*F.A.A. v. Cooper,*
    132 S. Ct. 1441 (2012) ............................................................................................... 8

*In the Matter of the Search of Content that Is Stored At Premises Controlled by*
    *Google,*
    No. 16-mc-80263, 2017 WL 1487625 (N.D. Cal. Apr. 25, 2017) .................................. *passim*

*In re 381 Warrants Direct to Facebook, Inc.,*
    __ N.E.3d __, 2017 WL 1216079 (N.Y. Apr. 4, 2017) .............................................. 12

*In re Information Associated with One Yahoo Email Address and Two Google*
    *Email Accounts,*
    Nos. 17–MJ–1234, 17–MJ–1235, 2017 WL 706307 (E.D. Wisc. Feb. 21, 2017) ................. 6, 7

*In re Information Associated with Two Google Email Accounts,*
    No. 17-MJ-1235 (E.D. Wis. Mar. 9, 2017) ............................................................... 6

*In re Search Warrants to Google,*
    Nos. 16-960-M-01, 16-MJ-1061, 2017 WL 471654 (E.D. Pa. Feb. 3, 2017) ....................... 6, 7

*In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by*
    *Microsoft Corp.,*
    829 F.3d 197 (2d Cir. 2016) .................................................................................... *passim*

*In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by*
    *Microsoft Corp.,* __ F.3d__, 2017 WL 362765 (2d Cir. Jan 24, 2017) ......................... 6

*Limited v. United States,*
    No. 15-mc-80280-EDL, 2016 WL 3211228 (N.D. Cal. Mar. 25, 2016) ....................... 3

*Maisonville v. F2 America, Inc.,*
    902 F.2d 746 (9th Cir. 1990) ................................................................................... 3

*Molzof v. United States,*
    502 U.S. 301 (1992) ................................................................................................. 8

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010) ........................................................................................ 1, 7, 11, 15

-1-

*Riley v. California*,
134 S. Ct. 2473 (2014) ................................................................................12

*RJR Nabisco, Inc. v. European Community*,
136 S. Ct. 2090 (2016) .....................................................................9, 13, 15

*Stoner v. California*,
376 U.S. 483 (1964) ....................................................................................12

*Strong v. United States*,
57 F. Supp. 2d 908 (N.D. Cal. 1999) ..........................................................2, 3

*U.S. v. Bach*,
310 F.3d 1063 (8th Cir. 2002) ....................................................................12

*U.S. v. Verdugo-Urquidez*,
494 U.S. 259 (1990) ......................................................................................8

*U.S. v. Warshak*,
631 F.3d 266 (6th Cir. 2010) .................................................................11, 12

*Zurcher v. Stanford Daily*,
436 U.S. 547 (1978) ......................................................................................8

**STATUTES**

18 U.S.C. § 2518 .................................................................................................7

18 U.S.C. § 2701 ...............................................................................................10

18 U.S.C. § 2702 ...............................................................................................10

18 U.S.C. § 2703 .......................................................................................*passim*

28 U.S.C. § 636 ...............................................................................................1, 3

Uniting and Strengthening America by Providing Appropriate Tools Required to
Intercept and Obstruct Terrorism Act (USA PATRIOT Act), Pub. L. No. 107-
56 (codified as amended at 18 U.S.C. § 2711(3)) .......................................9

Wiretap Act ........................................................................................................7

**RULES**

Fed. R. Crim. P. 41 .............................................................................................8

N.D. Cal. Civ. R. 72-3 .........................................................................................1

**OTHER AUTHORITIES**

U.S. Const. amend. IV .....................................................................................8, 12

132 Cong. Rec. S7991 (daily ed. June 19, 1986) .............................................10

H.R. Rep. No. 99-647, at 68 (1986) .............................................................8

InfoWorld, Vol. 11, Issue 39 (Sept. 25, 1989) .........................................5

Letter from Assistant Attorney General Peter J. Kadzik, Department of Justice
   Office of Legislative Affairs, to Hon. Joseph A. Biden, President of the Senate,
   July 15, 2016, available at
   https://www.aclu.org/sites/default/files/field_document/doj_legislative_propos
   al.pdf .............................................................14

Letter from Mythili Raman, Acting Assistant Attorney General, to Judge Reena
   Raggi, Chair Advisory Comm. on the Criminal Rules (Sep. 18, 2013)
   (available at https://www.justsecurity.org/wp-content/uploads/2014/09/Raman-
   letter-to-committee-.pdf) .............................................................8

Orin Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's
   Guide to Amending it*, 72 Geo. Wash. L. Rev. 1208 (2004) ...........................10

Orin Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev.
   373 (2014) .............................................................11, 14

S. 2986, H.R. 5323, 114th Cong. (2016) .............................................................14

S. Rep. No. 99-541, at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 ...........................10

## OBJECTIONS TO MAGISTRATE ORDER

Pursuant to 28 U.S.C. § 636(b)(1)(B),(C) and Civil Local Rule 72-3, Google objects to the Amended Order and Memorandum Decision denying Google's motion to quash or amend a search warrant. *In the Matter of the Search of Content that Is Stored At Premises Controlled by Google*, No. 16-mc-80263, 2017 WL 1487625 (N.D. Cal. Apr. 25, 2017) (hereinafter, "Decision"). Google objects for the following reasons as further discussed in Google's Memorandum in Support:

**1.** The Magistrate Judge erred in concluding that disclosing content stored outside of the United States in response to a search warrant issued pursuant to § 2703 of the Stored Communications Act "is a domestic application of the SCA." Dec. at *4. This conclusion is contrary to *In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016), which held that searching and seizing data outside the United States so that it could be produced in response to an SCA warrant did constitute an unlawful extraterritorial application of the SCA.

**2.** The Magistrate Judge erred by ignoring the Supreme Court's admonition not to extend the reach of a statute outside the United States based on speculation that Congress would have done so if Congress had considered it. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 261 (2010). The Supreme Court cautioned courts to "give the statute the effect its language suggests, however modest that may be; not to extend it to admirable purposes it might be used to achieve." *Id.* at 270. The Decision does not heed that caution. Instead, it engages in precisely the type of "judicial-speculation-made-law—divining what Congress would have wanted if it had thought of the situation before the court"—that the Supreme Court warned against. *Id.* at 261. The Decision's legislative bent is revealed by its citation of and reliance upon the opinions dissenting from the Second Circuit's denial of the government's motion for rehearing en banc, *see* Dec. at *4, and the Decision's occasional admission that it is engaged not in interpreting and applying statutory text but in the broader, legislative inquiry of balancing interests. *See* Dec. at *4 (comparing the purpose behind Google's storage decisions with those of other providers).

**3.**     The Magistrate Judge erred in finding that the focus of § 2703 of the SCA was "disclosure of the data in the service provider's possession." Dec. at *4. Prior to the SCA, there were no statutory limits on the government's power to compel a provider to disclose records. Section 2703 did not empower the government; it restricted the government's power in order to enhance user privacy. The Decision's misunderstanding of the purpose and historical context of § 2703 contributed to its erroneous conclusion that none of the conduct relevant to § 2703's focus occurred outside the United States.

**4.**     The Magistrate Judge erred both by characterizing the process that Google must undertake in responding to a search warrant as simply "access[ing] and deliver[ing]" data from its headquarters in California for which Google has made no "storage decision." Dec. at *4. This description oversimplifies the process Google must undertake in order to disclose data to the government. Google's development of a network that distributes data "in aid of network efficiency," *id*. at 8, is necessarily, a "storage decision." And the process required to assist in the execution of a warrant that seeks data stored on such a network includes writing queries that permit searches of datacenters in different locations; executing those queries to search Google's network to identify responsive data; and retrieving responsive data from wherever on Google's network that data resides. In cases such as this case, conduct necessary to assist in the execution of the warrant would take place outside of the United States. *See* Stipulation of Facts, ECF No. 37. Such conduct is not only "conduct relevant to the focus" of the SCA, it is conduct essential to its effectiveness, and requiring Google to undertake this process outside of the United States is an impermissible extraterritorial application of the SCA.

**5.**     To the extent the Decision is construed as an order as opposed to a report and recommendation, the magistrate judge erred by proceeding to issue an order that resolves this matter without Google's consent. Google's motion to quash was analogous to a dispositive motion, and an order granting or resolving the motion ends the matter. *Strong v. United States*, 57 F. Supp. 2d 908, 913-14 (N.D. Cal. 1999) (noting that a petition to quash a summons in an enforcement proceeding is "analogous to a dispositive motion. Once the petitions are decided, the matter is over. Unlike a discovery motion, petitions to quash summonses are not ancillary to a

-2-

larger proceeding. They are the entire proceeding."); *see also Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990) (holding that a magistrate judge lacks authority to issue a final order with respect to any matter *analogous* to the eight excluded motions in section 636(b)(1)(A)). In the Ninth Circuit, "a magistrate judge may not determine motions that are analogous to the enumerated motions, i.e., dispositive motions," set forth in section 636(b)(1)(A). *Strong*, 57 F. Supp. 2d at 913. Thus, the Decision cannot be a final order without Google's consent, which Google has not provided. *See* Google's Declination of Consent, ECF No. 12; *see also Limited v. United States*, No. 15-mc-80280-EDL, 2016 WL 3211228 at *1 (N.D. Cal. Mar. 25, 2016) (magistrate judges cannot issue final orders dismissing petitions to quash IRS summons without consent of the parties). Accordingly, the Decision should be construed as a report and recommendation subject to de novo review by the District Court. *See* 28 U.S.C. 636(b)(1)(C) (district courts conduct de novo review of a report and recommendation issued by a magistrate judge regarding a dispositive motion).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## I.  INTRODUCTION

This matter involves a search warrant issued under the Stored Communications Act ("SCA") that purports to require Google Inc. ("Google") to search for customer communications stored in locations both inside and outside the United States, and seize them for the government. *See In the Matter of the Search of Content that is Stored at Premises Controlled by Google*, No. 16-mc 80263 (N.D. Cal. Apr. 25, 2017) (ECF No. 46) (hereinafter, "Decision").  Google has, to the best of its current capabilities, searched its data centers in the United States, seized the customer communications within the scope of the warrant, and produced those communications to the government.  The question raised by this matter is whether the warrant lawfully requires Google to search for customer communications stored in data centers located outside the United States, and seize those communications for the government despite the fact that the warrant does not and could not authorize the government to conduct directly that same search and seizure.

The United States Court of Appeals for the Second Circuit, the only Circuit Court to have addressed the issue, properly held that an SCA warrant cannot compel a service provider to search data centers and seize customer communications located outside the United States.  *In the Matter of a Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corporation*, 829 F.3d 197 (2d Cir. 2016) ("Second Circuit Decision").  When Congress enacted the SCA, it did not consider the complex policy issues that such foreign searches and seizures raise, and the statute gives no indication that a warrant issued under its terms requires a provider to engage in extraterritorial searches and seizures.  Under the presumption against extraterritoriality, a well-established canon of statutory interpretation, a statute does not apply to conduct outside the United States absent a clear indication that Congress intended it to do so.

Despite the Supreme Court's repeated emphasis in recent years on the importance of the presumption against extraterritoriality, the Magistrate Judge's Decision fails to apply that presumption properly.  She held that a provider's search and seizure of customer communications stored outside the United States did not constitute extraterritorial conduct relevant to the focus of

-4-

the SCA.  Decision at *4.  Respectfully, the Decision is incorrect.  The SCA is focused on protecting the privacy of electronic communications entrusted to service providers by regulating the conditions under which access to those communications may or may not occur, and requires the government to obtain a search warrant (as opposed to a subpoena or order) in order to compel a provider to assist in the execution of a search and seizure of communications content.  The invasion of privacy occasioned by the execution of a warrant to access and retrieve such communications is certainly relevant to that statutory focus.

That interpretation no doubt implicates many policy questions.  Thirty-one years ago, when Congress enacted the SCA, the Internet was in its infancy.  Public access to the Internet would not be available for another three years.  *See* InfoWorld, Vol. 11, Issue 39 at 32 (Sept. 25, 1989) (reporting availability of first public gateways to the Internet).  Congress did not foresee the more-than-3-billion-user global network supporting myriad communication, personal, and commercial services that the Internet has become, nor did it consider the complex and conflicting policy and international diplomatic issues raised by government requests for communications stored on such a worldwide network.

Congress should consider these difficult policy issues, hear from all stakeholders in an open, public debate, and reform and modernize the statute.  A court, confined as it is to the single case or controversy before it, has neither the institutional competence nor the constitutional authority to amend the law.  The Court exceeded these bounds by reading into the statute an extraterritorial application—the ability to require a provider to assist the government in executing a warrant to search and seize private customer communications stored outside the United States— that Congress did not inscribe there.

The Court should leave to Congress the legislative responsibility of amending the SCA, give effect to its plain language, and hold that a warrant issued pursuant to its terms cannot require a service provider to search and seize customer communications stored in data centers located outside the United States.  For these reasons, the Court should amend the warrant to require Google to produce only data stored in the United States.

## II.    FACTUAL BACKGROUND

The government served on Google a search warrant dated July 2, 2016, purporting to compel Google to search for, seize, and disclose customer records relating to a number of Google accounts.  *See* Decision at *2.[1]  In response, Google produced responsive records that it confirmed at the time were stored in the United States.  *Id.*  Google thereafter moved to quash the warrant on December 6, 2016; the government opposed, and Magistrate Judge Beeler issued the Decision on April 19, 2017 (and amended that Decision on April 25, 2017).  *Id.*  Google now timely files this objection and memorandum in support thereof.

## III.    ARGUMENT

A unanimous panel of the U.S. Court of Appeals for the Second Circuit Court has held that an SCA warrant can compel a provider to produce only customer records stored in the United States.  Second Circuit Decision, 829 F.3d at 222.  An SCA warrant cannot compel a provider to produce records stored outside the United States.  *Id.*  The Second Circuit recently denied the government's petition for rehearing *en banc* (although four judges dissented from the denial).  *En Banc* Denial, __ F.3d__, 2017 WL 362765 (2d Cir. Jan 24, 2017).  No other Court of Appeals has addressed the issue.[2]

---

[1] Both because the warrant remains under seal and in order to protect the integrity of the government's investigation, Google has not filed a copy of the warrant with these objections, nor has it provided further details about records sought by the government.  To the extent the Court determines it is necessary for resolution of the issues raised by the Order, Google will supplement the record under seal.

[2] In addition to the Decision in this case, a magistrate judge in the Eastern District of Pennsylvania recently entered an opinion granting the government's motion to compel, finding that "the conduct relevant to the SCA's focus will occur in the United States."  *See In re Search Warrants to Google*, Nos. 16-960-M-01, 16-MJ-1061, 2017 WL 471654, at *11 (E.D. Pa. Feb. 3, 2017).  This matter is pending review by the District Court, which on April 18th held oral argument on Google's objections.  *See* Google Inc.'s Objections Magistrate's Orders Granting Government's Motions to Compel and Overruling Google's Overbreadth Objection, In re Search Warrants to Google, No. 16-MJ-960, 16-MJ-1061 (E.D. Pa. Feb. 15, 2017), ECF No. 34.  Another magistrate judge in the Eastern District of Wisconsin recently issued a pre-authorization opinion purporting to direct Google to disclose data located outside the United States in response to a warrant, without first hearing from Google.  *In re Information Associated with One Yahoo Email Address and Two Google Email Accounts*, Nos. 17–MJ–1234, 17–MJ–1235, 2017 WL 706307 (E.D. Wisc. Feb. 21, 2017).  This decision is likewise pending review, as after Google filed objections, the magistrate ordered Google to file a motion to amend (which Google did on March 17th).  *In re Information Associated with Two Google Email Accounts*, No. 17-MJ-1235 (E.D. Wis. Mar. 9, 2017), ECF Nos. 4, 8.

-6-

**A.     The SCA's warrant provision does not authorize searches of data stored extraterritorially.**

"[L]egislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010). The SCA's warrant provision indicates no such contrary intent and was meant to have no application outside the United States. *See In re Search Warrant No. 16-960-01 to Google*, 2017 WL 471564 at *7 (E.D. Pa. Feb. 3, 2017).

Congress did not intend the SCA's warrant provision to apply outside the United States. As the Second Circuit observed, "a globally-connected Internet available to the general public for routine e-mail and other uses was still years in the future" when Congress passed the SCA. Second Circuit Decision, 829 F.3d at 206. Congress therefore had no occasion to extend the SCA's warrant provision outside the United States at the time the act was passed, and nothing in the SCA's text or legislative history indicates that it intended to do so.

To the contrary, Congress distinguished between a "warrant," which it generally required the government to obtain before compelling a provider to search, retrieve, and disclose customers' private communications, and a "subpoena" or an "order," which it required the government to obtain before compelling a provider to disclose its own business records. *Compare* 18 U.S.C. § 2703(a) *with* § 2703(c). The distinction was designed to do more than require the government to make a probable cause showing to obtain user content; the Wiretap Act, amended by the legislation that created the SCA, had addressed a similar concern regarding the interception of customers' communications by setting forth a procedure by which the government can apply for, and a court can grant, *an order issued on a finding of probable cause requiring a provider to intercept communications. See* 18 U.S.C. § 2518(3).[3] If Congress intended in section 2703(a) to create a probable cause order, it would have done so, as it did in the Wiretap Act.

---

[3] Congress also demonstrated in the SCA that it could create specialized types of orders requiring providers to disclose information about their customers. *See* 18 U.S.C. § 2703(d). If it intended to create a probable cause order for the disclosure of communications content in the SCA, it would have done so.

-7-

1    Instead, Congress used the term of art "warrant" to invoke the traditional limitations and

2    protections long associated with that term.  *See F.A.A. v. Cooper*, 132 S. Ct. 1441, 1449 (2012)

3    ("[W]hen Congress employs a term of art, 'it presumably knows and adopts the cluster of ideas

4    that were attached to each borrowed word in the body of learning from which it was taken.'")

5    (quoting *Molzof v. United States*, 502 U.S. 301, 307 (1992)).  Congress understood that the

6    private content of stored communications was protected by the Fourth Amendment, and that

7    accessing them would entail a search and seizure.  *See* H.R. Rep. No. 99-647, at 68 (1986) ("The

8    Committee required the government to obtain a search warrant because it concluded that the

9    contents of a message in storage were protected by the Fourth Amendment.").  Among the

10   traditional limitations and protections associated with warrants are their territorial limitations;

11   they may only authorize searches and seizures to be conducted in the United States.  *See U.S. v.*

12   *Verdugo-Urquidez*, 494 U.S. 259, 274 (1990) (holding that a warrant "would be a dead letter

13   outside the United States"); *Microsoft*, 829 F.3d at 212 ("a warrant protects privacy in a distinctly

14   territorial way").  Congress also would have understood that "[s]earch warrants are not directed at

15   persons; they authorize the search of 'place[s]' and the seizure of 'things.'"  *Zurcher v. Stanford*

16   *Daily*, 436 U.S. 547, 555 (1978) (2nd alteration in original) (citation omitted).   It is beyond

17   question, for example, that an SCA warrant could not authorize the FBI to travel to a Google data

18   center in Singapore, demand access to the servers located there, and download from them

19   communications otherwise within the scope of the warrant.[4]

20       To the extent subsequent amendments to the SCA's warrant provision are relevant to its

21   interpretation, they confirm that the traditional territorial limitations associated with warrants are

_____

[4] While Rule 41 was modified on December 1, 2016, to permit magistrate judges to issue warrants
to search out-of-district electronic information in certain circumstances not relevant here, nothing
in the amended Rule contemplates a search of property that is or may be located outside the
country.  As the Department of Justice acknowledged in a letter to Advisory Committee on the
Criminal Rules, "[i]n light of the presumption against international extraterritorial application,
and consistent with the existing language of Rule 41(b)(3), this amendment does not purport to
authorize courts to issue warrants that authorize the search of electronic storage media located in
a foreign country or countries."  Letter from Mythili Raman,  Acting Assistant Attorney General,
to Judge Reena Raggi, Chair Advisory Comm. on the Criminal Rules (Sep. 18, 2013) (available at
https://www.justsecurity.org/wp-content/uploads/2014/09/Raman-letter-to-committee-.pdf).
Accordingly, the government cannot obtain a search warrant to search property outside the United
States.

-8-

incorporated into the SCA's warrant provision.  In 2001, Congress amended the SCA to extend

the authority of SCA warrants issued by federal courts from their traditional territorial limits

within the federal district of the issuing court to anywhere within the United States.  *See* Uniting

and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct

Terrorism Act (USA PATRIOT Act), Pub. L. No. 107-56, § 220 (codified as amended at 18

U.S.C. § 2711(3)) (requiring provider to comply with warrant issued by any federal court with

jurisdiction over offense being investigated).  Congress did not, however, extend the authority of

SCA warrants to require retrieval of communications stored outside the United States.  Where

Congress intended to alter or modify the established practices applicable to a warrant, it did so

expressly.  *See* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No.

107-273, § 11010 (codified at 18 U.S.C. § 2703(g)) (providing that law enforcement officer does

not have to be present for service or execution of SCA warrant).  The SCA's use of the term of art

"warrant" and its legislative history reflect a clear intent by Congress to limit the searches and

seizures that may be required under the SCA to locations in the United States.

The SCA's warrant provision therefore compels a service provider to search for and seize

electronic communications only within the territorial jurisdiction of the United States.  SCA

warrants, like other warrants, have a limited territorial reach and thus have no force or effect

outside the United States absent clear congressional authorization.

**B.    Requiring a provider to execute a warrant to search and seize data outside the
        United States is an impermissible extraterritorial application of the SCA.**

When a statutory provision such as the SCA warrant provision has no extraterritorial

reach, any application of it to conduct outside the United States that is relevant to the statute's

focus constitutes "an impermissible extraterritorial application regardless of any other conduct

that occurred in U.S. territory."  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090,

2101 (2016).  The SCA's focus is on protecting the privacy of electronic communications by

ensuring that intrusions on that privacy occur only pursuant to the detailed requirements and

limitations of the statute.  But whether the focus is characterized as privacy, compelled disclosure,

or both, when a warrant requires a provider to assist in the execution of a warrant by querying its

-9-

network to search data centers outside the United States, seizing customer communications within the scope of the warrant, and retrieving them to the United States for disclosure to the government, that is not only conduct relevant to the focus of the SCA, it is essential to its effectiveness. Requiring Google pursuant to the warrant to search and seize customer communications located on its servers outside the United States would thus constitute an impermissible extraterritorial application of the SCA.

**1.      The SCA's focus is protection of the privacy of electronic communications.**

Congress enacted the SCA to ensure that the privacy of electronic communications is appropriately protected, including when the government seeks to compel a provider to access and disclose those communications. Senator Leahy, one of the SCA's authors, described its purpose as "updat[ing] our legal privacy protections [to] bring[] them in line with modern telecommunications and computer technology." 132 Cong. Rec. S7991 (daily ed. June 19, 1986) (statement of Sen. Leahy). As the Department of Justice observed in guidance issued prior to this litigation, the SCA "sets forth a system of statutory privacy rights for customers and subscribers of computer network service providers." *See Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*, U.S. Department of Justice, Executive Office of the United States Attorneys at 115 (Aug. 2009); *see also* S. Rep. No. 99-541, at 5 (1986) ("[T]he law must advance with the technology to ensure the continued vitality of the fourth amendment."), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3559.

To achieve this purpose, Section 2701 protects the privacy of electronic communications by criminalizing unauthorized access to such communications stored by a service provider. *See* 18 U.S.C. § 2701. Section 2702 protects the privacy of electronic communications by prohibiting service providers from voluntarily disclosing such communications, except under expressly enumerated circumstances. *See id.* § 2702. And Section 2703 protects the privacy of electronic communications by requiring the government to obtain a subpoena, an order, or a warrant before compelling a provider to disclose subscriber information, records regarding the use of a communications service, or the contents of communications, respectively. *See id.* § 2703. "The privacy protections contained in 18 U.S.C. §§ 2702 and 2703 provide the heart of the SCA." Orin

-10-

1   Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending*

2   *it*, 72 Geo. Wash. L. Rev. 1208, 1218 (2004). Privacy of electronic communications is, in the

3   words of the *Morrison* Court, "the object[] of the statute's solicitude." *Morrison*, 561 U.S. at 267

4   (identifying certain transactions as the object of the Exchange Act's solicitude); s*ee also*

5   *Microsoft*, 829 F.3d at 217 (privacy is the focus of the SCA).[5]

6       **2.       Assisting in the execution of an SCA warrant is conduct relevant to its focus.**

7           Section 2703, under which the warrants were issued, protects the privacy of electronic

8   communications by requiring that the government may compel a provider to search, seize, and

9   disclose such communications to the government only pursuant to a warrant issued upon a

10  showing of probable cause.[6] The searching, accessing, and retrieval of communications

11  compelled by the warrant affect users' privacy, and they are an essential part of the statutory

12  prerequisites for disclosing customer communications to the government.

13          Congress chose to protect the privacy of basic subscriber information, records regarding

14  the use of an electronic communications service, and the communications themselves with three

15  distinct forms of legal process. *See* 18 U.S.C. § 2703. For the first category, which it deemed

16  least private, it chose a subpoena; for the second, it chose a court order; and for the third, the

17  content of communications, which it deemed most private, it chose "the full protection of a

18  warrant." *See* Orin Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev.

19  373, 384 (2014).

20          Unlike the subscriber information obtained with a subpoena or the customer records

21  obtained with a court order, the communications obtained with a warrant are not the provider's

22  business records or information conveyed to the provider by the customer; they are the

23  customer's private communications, and obtaining them entails a search and a seizure in a sense

24

---

25  [5] The Court should not narrowly confine its inquiry regarding the focus of the statute to a single, isolated subsection, but rather take into account the whole statute and related legislation. *See*

26  *Morrison* at 267 (taking into account the prologue of the Exchange Act in determining its focus); 268 (taking into account the related Securities Act of 1933).

27  [6] Although section 2703(b) provides that the government may use lesser legal process for certain types of communications under certain conditions, that subsection of the SCA has been found to

28  be unconstitutional. *See U.S. v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010).

not implicated by the other two categories of data. *See U.S. v. Bach*, 310 F.3d 1063, 1067 (8th Cir. 2002) (describing Yahoo!'s fulfillment of an SCA warrant as "the search and seizure of Bach's email from Yahoo!'s server by Yahoo!'s technicians"). This distinction is critical. It renders inapt any analogy between a subpoena or order used to compel production of business records, and a warrant to search and seize customer communications.

The government seeks here not the equivalent of requiring a bank or a hotel to retrieve business records from outside the United States, as it might with a subpoena, but rather the equivalent of requiring a bank to search, seize, and retrieve to the United States documents its customer has stored in a safe deposit box in a foreign branch or requiring a hotel chain to search, seize, and retrieve to the United States luggage or correspondence a customer has stored in a room in a foreign hotel. *See U.S. v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) (distinguishing between business records of a third party and customers' private communications held in trust by communications providers and finding the latter are entitled to Fourth Amendment privacy protections); *Stoner v. California*, 376 U.S. 483, 489 (1964) (holding that searching a hotel room without a warrant violated the Fourth Amendment). As noted above, however, a warrant cannot require the search of a foreign place and the seizure of things stored there.[7]

As the Eighth Circuit has noted, "Congress called them warrants and we find that Congress intended them to be treated as warrants." *Bach,* 310 F.3d at 1066 n.1; *see also In re 381 Warrants Direct to Facebook, Inc.*, __ N.E.3d __, 2017 WL 1216079, 2017 N.Y. Slip Op. 02586 (N.Y. Apr. 4, 2017) ("[T]he SCA plainly distinguishes between subpoenas and warrants, and there is no indication that Congress intended for SCA warrants to be treated as subpoenas. Indeed, to so hold, would be to ignore the plain language of the SCA in contravention of the rules

---

[7] The Supreme Court has recognized that when conducting a search and seizure of private communications, location matters. In *Riley v. California*, 134 S. Ct. 2473 (2014), the Court addressed whether law enforcement could search the phone of a suspect incident to that suspect's arrest. The Court distinguished between searching communications stored locally on the suspect's phone and searching the suspect's "data located elsewhere . . . on remote servers," noting that the latter "would be like finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house." *Id.* at 2491. Like the search the Court cautioned against in *Riley*, the search the government proposes in this case of a location outside the United States raises significant and distinct policy and privacy issues that Congress has not considered or addressed.

-12-

of statutory interpretation."). Established rules of statutory interpretation require no less, *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."), and the Court erred when, despite Congress's use of the term "warrant," it treated SCA warrants instead like subpoenas or court orders. *See* Decision at *4.

A warrant – unlike a subpoena or an order – authorizes the search of a place and the seizure of things, and is a dead letter to the extent it purport to search places and seize things located outside of the United States. The location of the search is therefore crucial to the analysis, and the magistrate judge erred by reducing the process of assisting in the execution of a warrant to "acess[ing] and deliver[ing]" data from Google's headquarters in the United States. Decision at *4. Such "access and delivery" involves writing a query to search databases located in countries outside of the United States; executing the query to search for files and file components stored in said databases; seizing the files and file components; reassembling the file components into files; and then retrieving those communications to the United States for production to the government. When an SCA warrant requires a provider to undertake this process to assist in the execution of the warrant, the steps necessary to the process constitute "conduct relevant to the focus" of the SCA. Because the government here seeks to conscript Google to undertake such conduct outside the United States, "the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 136 S.Ct. at 2101.

**3.** **The Court should decline to weigh policy interests Congress has not yet considered.**

This case, and others like it, raise important policy issues regarding how best to protect the privacy of electronic communications and law enforcement's ability to investigate crimes when evidence may reside within a borderless, distributed, global communications network. Adjusting the SCA to this changed landscape will require resolution of numerous policy issues. For example, Congress might choose to extend the SCA's warrant power only to U.S. citizens' data wherever stored to encourage other nations to limit their laws applied to their providers similarly, and thus protect U.S. citizen data wherever it may be stored against disclosure to foreign law

-13-

enforcement.  Congress might choose to extend the SCA's warrant power to data wherever located, but require the government to provide notice to the government of the customer's country of nationality or residence before serving such a warrant on the provider.  Or Congress might choose to allow execution of SCA warrants overseas when ordered by a federal court, but not by state or local courts.[8]  Because Congress did not consider those issues when it enacted the SCA, the statute does not address them.  *See* Kerr, *Next Generation* at 410 ("ECPA simply was not written with the territoriality problem in mind.").  And it therefore would not be proper for the courts to wade into these issues.

The Court erroneously did just that, however, by determining that despite the use of the term "warrant" in the statute, an SCA warrant is "not a search warrant in the classic sense," Decision at *4, by relying on the opinions dissenting from the Second Circuit's denial of the government's motion for rehearing en banc, *id*, and by erroneously concluding that because "the process of distributing information is automatic, in aid of network efficiency," rather than self-reported user location, there is no "storage decision" and thus it does not matter where the data is stored, *id*.  In so doing, the Court "follow[ed] as persuasive the reasoning" of the dissenting judges in the En Banc Denial.  *Id*. at 7.  The Court thus erred by holding that "disclosure of information from Google's headquarters in the United States is a domestic application of the SCA."  *Id*.

---

[8] Congress might also craft legislation that takes into account the potential that allowing the U.S. government to search communications stored outside the United States "will significantly deter the use of remote data management technologies by business and individuals, particularly their use of U.S. cloud services providers, and thereby undermine a significant contributor to U.S. economic growth."  Brief of BSA: the Software Alliance et al. as Amici Curiae Supporting Appellant, *Microsoft Corp. v. U.S*., 829 F.3d 197 (2d Cir. 2016) (No. 14-2985), 2014 WL 7213177.  Indeed, both Congress and the government have acknowledged the need for legislation to address some of these complex and conflicting policy issues.  This is a fact well appreciated by the Members of Congress who have introduced a bill proposing related amendments.  *See* International Communications Privacy Act, S. 2986, H.R. 5323, 114th Cong. (2016); Letter from Assistant Attorney General Peter J. Kadzik, Department of Justice Office of Legislative Affairs, to Hon. Joseph A. Biden, President of the Senate, July 15, 2016 (proposing to Congress legislation to address "potential conflicting legal obligations that U.S. electronic communications service providers . . . may face when required to disclose electronic data by foreign governments investigating serious crime, including terrorism"), available at https://www.aclu.org/sites/default/files/field_document/doj_legislative_proposal.pdf.

This analysis departs from the plain language of the SCA. The Supreme Court has admonished lower courts not to engage in such "judicial-speculation-made-law--divining what Congress would have wanted if it had thought of the situation before the court." *Morrison*, 561 U.S. at 261. The proper role of the judiciary is instead "to give the statute the effect its language suggests, however modest that may be; not to extend it to admirable purposes it might be used to achieve." *Id.* at 270. As with RICO in *RJR Nabisco*, the proper question regarding the SCA in this case is "not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court,' but whether Congress has affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco*, 136 S. Ct. at 2100 (internal citations omitted); *see also Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957) (Congress "alone has the facilities necessary to make fairly [the] important policy decision" whether a statute applies extraterritorially). Congress has not.

Although the SCA requires modernization and reform, it is for Congress in its legislative capacity, not the courts, confined as they are to the narrow case or controversy before them, to give audience to public debate, weigh the competing policy interests, and enact a law that takes them into account.

## IV.    CONCLUSION

For the foregoing reasons, the Court should amend the warrant to require Google to produce only data stored in data centers located inside the United States.

DATED:  May 3, 2017                          **PERKINS COIE LLP**


By: */s/ Todd M. Hinnen*
    Todd M. Hinnen, *pro hac vice*
    THinnen@perkinscoie.com

Attorneys for Google Inc.

-15-