BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA VALLIERE (CABN 147374)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
KATHRYN HAUN (DCBN 484131)
MERRY JEAN CHAN (CABN 229254)
Assistant United States Attorneys

>    450 Golden Gate Avenue, Box 36055
>    San Francisco, California 94102-3495
>    Telephone:  (415) 436-6959
>    Fax:  (415) 436-7234
>    William.Frentzen@usdoj.gov; merry.chan@usdoj.gov

ANDREW S. PAK (NYBN 4463436)
CATHERINE ALDEN PELKER (MD)
Trial Attorneys

>    Department of Justice
>    Computer Crime & Intellectual Property Section
>    1301 New York Avenue, N.W., Suite 600
>    Washington, D.C. 20005
>    Andrew.Pak@usdoj.gov; Catherine.Pelker@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CONTENT STORED AT PREMISES CONTROLLED BY GOOGLE INC. AND FURTHER DESCRIBED IN ATTACHMENT A | Case No. 3:16-mc-80263-LB<br><br>REDACTED VERSION OF DOCUMENTS<br><br>ATTACHMENT TO STIPULATION REGARDING REDACTIONS<br><br>(PART 1 of 5) |

REDACTED VERSION OF DOCUMENTS

1   Julie E. Schwartz, Bar No. 260624
    JSchwartz@perkinscoie.com
2   PERKINS COIE LLP
3   3150 Porter Drive
    Palo Alto, CA 94304-1212
4   Telephone: 650.838.4300
    Facsimile: 650.838.4350
5
6   Todd M. Hinnen, *pro hac vice pending*
    THinnen@perkinscoie.com
7   John R. Tyler, *pro hac vice pending*
    RTyler@perkinscoie.com
8   PERKINS COIE LLP
    1201 Third Ave. Suite 4900
9   Seattle, WA 98101
    Tel.: (206) 359-8000
10  Fax: (206) 359-9000
11  Attorneys for Google Inc.

12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16   In the Matter of the Search of Content          Case No. 3-16-70816
                              Stored at
17   Premises Controlled by Google Inc. and
     Further Described in Attachment A               **Notice of Motion and Motion to Quash or**
18                                                   **Amend Search Warrant; Memorandum of**
                                                     **Points and Authorities in Support**
19

20                                                   Under Seal

21                                                   Date:        January 19, 2017
22                                                   Time:        9:30 a.m.
                                                     Judge:       Hon. Laurel Beeler,
23                                                                 U.S. Magistrate Judge

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO QUASH OR AMEND SEARCH WARRANT; MEMO OF POINTS AND AUTHORITIES
                                                                    Case No. 3-16-70816

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         PLEASE TAKE NOTICE that on January 19, 2017, at 9:30 a.m., or as soon thereafter as

3    this matter may be heard before the Honorable Laurel Beeler in Courtroom C - 15th Floor at the

4    above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Non-

5    Party Google Inc. ("Google") will, and hereby does, petition the Court for an Order to Quash or

6    Amend the Search Warrant, pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

7         Google brings this Motion on the basis that the Warrant purports Google to disclose

8    records that the government cannot compel Google to disclose, in conflict with the Stored

9    Communications Act, 18 U.S.C. § 2703.  Moreover, the Warrant is overbroad, lacks particularity,

10   and cannot have been based on the requisite showing of probable cause that each user used each

11   service in a manner that would generate records likely to contain evidence of the crime under

12   investigation.

13        This Motion is based upon this Notice of Motion and Motion, the attached Memorandum

14   of Points and Authorities and supporting Declaration, the argument at hearing, and all other

15   records, papers and pleadings on file in this action.

16

17   DATED: December 6, 2016                    **PERKINS COIE** LLP

18                                              By:  _____

19                                                   Julie E. Schwartz

20                                              Attorneys for Non-Party Google Inc.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION & SUMMARY

The government has issued a search warrant to Google seeking records relating to the use of       Google services by       different Google users. For the sets of records the government has defined with particularity, Google has already produced all of the records it can lawfully produce to the government, but the government has insisted that Google produce additional records that the government cannot compel Google to disclose under *Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp. (Microsoft)*, 829 F.3d 197 (2d Cir. 2016) ("*Microsoft*"). Under *Microsoft*, a search warrant issued under the Stored Communications Act ("SCA") cannot compel Google to disclose content that is or may be stored exclusively outside the United States.

Moreover, to the extent that the Warrant purports to compel Google to produce records beyond those already produced it is overbroad, fails to identify with sufficient particularity the additional service(s) or sets of records that Google must search, and fails to establish probable cause with respect to each of the       users for each such service or set of records. Facts demonstrating probable cause to search an email account do not necessarily demonstrate probable cause to search records of other, unrelated services (such as website analytics). It is highly unlikely that the government demonstrated probable cause to believe that each of the       users used each of the       listed services in a manner that was likely to generate records containing evidence of the crime under investigation. In fact, it cannot have, because as Google has informed the government, several of the listed services either hold no data at all or no longer exist. Google has already provided all records in its possession that the Warrant lawfully compels Google to produce.

Accordingly, the Court should quash the Warrant to the extent it purports to compel Google to disclose records that are not confirmed to be stored in the United States. The Court should further quash or amend the remainder of the Warrant and require the government to establish probable cause, or define with sufficient particularity the sets of records for which the

1  government may have already established probable cause, for each of the ▮ different sets of
2  records to be searched.

3                        **II.    FACTUAL BACKGROUND**

4      On July 2, 2016, Google received a search warrant (dated June 30, 2016) as part of an
5  investigation into an alleged wire fraud. *See* Declaration of John R. Tyler in Support of Motion to
6  Quash or Amend Search Warrant and Administrative Motion to File Under Seal ("Tyler Decl."),
7  Ex. A (the "Warrant"). The Warrant directed Google to produce, with respect to ▮ different
8  Google accounts identified by email address, all electronic mail, transactional information of all
9  email and account activity, business records and subscriber information. It also directed Google
10 to identify "linked" accounts based on a variety of factors. *See id.* The Warrant further requested
11 for each of the ▮ accounts, "all files, logs and data associated with" ▮ different "Google
12 Services." *Id.*

13     In late September 2016, Google produced ▮ files totaling over ▮ megabytes of data
14 to the government, which contained the following information responsive to the Warrant for each
15 of the ▮ accounts:  basic subscriber information for each Google account, as well as any
16 associated YouTube and Android accounts; a list of accounts that shared an authentication cookie
17 with any of the ▮ accounts; contacts; native Google Drive files and metadata files associated
18 with native and non-native Google Drive files (which production includes data responsive to the
19 demand for "Google Docs"); location history; and search history (described in the Warrant as
20 "Web History"). Tyler Decl., Ex. B.

21     Google also produced Gmail content for all but ▮ accounts. *Id.* One of these ▮
22 accounts had been purged long before Google received the Warrant. The Gmail content
23 associated with the other ▮ accounts was stored exclusively outside the United States. With
24 respect to the ▮ accounts for which it produced Gmail content, Google did not produce any
25 emails that had attachments, nor did it produce content associated with Photos, because—given
26 the nature of Google's distributed systems—they were not confirmed to be stored within the
27 United States.

28

-2-

1        On November 16, 2016, counsel for Google spoke with Assistant United States Attorney

2  William Frentzen regarding Google's production. Tyler Decl., ¶ 4. Counsel for Google informed

3  the government that as a result of the development of additional tools, Google had confirmed that

4  an additional set of information responsive to the Warrant was stored in the United States, and

5  Google would produce that additional information by the end of the week. *Id.* AUSA Frentzen

6  expressed disagreement with Google's interpretation of the law, and suggested that the

7  government might file a motion for an order to show cause if Google did not produce all records

8  sought by the Warrant, regardless of their location, by the end of the week. *Id.*

9        On November 18, 2016, Google produced the additional information to the

10  government. Tyler Decl., ¶ 5, Ex. C. For the accounts located in the United States, Google

11  produced header information associated with the emails that had attachments, the content of the

12  emails (though not the attachments themselves), and metadata for Photos. *Id.*

13        On November 21, 2016, Google sent a letter to AUSA Frentzen detailing its production to

14  date, and inviting further discussion to resolve this matter without litigation. Tyler Decl., ¶ 6, Ex.

15  D. On December 6, 2016, Google contacted AUSA Frentzen to confirm whether, in light of

16  Google's production, the government considered this matter resolved. *Id.* ¶ 7. Unable to so

17  confirm and given the government's stated intention to seek an Order to Show Cause, Google

18  files this motion to quash.

19                   **III.   ARGUMENT**

20        Google has already produced the electronic records that are responsive to the Warrant and

21  are maintained by Google within the geographic reach of the Warrant. The government has

22  nonetheless insisted that Google produce additional records that are not within the scope of the

23  Warrant. First, under the Second Circuit decision in *Microsoft*, a warrant issued by a U.S. court

24  pursuant to the SCA can only compel a provider to produce electronic records stored within the

25  United States. The SCA is clear that the government's authority to compel a provider to disclose

26  records of the sort described in the Warrant must be in compliance with the SCA. 18 U.S.C.

27  § 2703. The Second Circuit, the highest court to address the issue, has held that a warrant issued

28  under the SCA only reaches data stored in the United States.

-3-

NOTICE OF MOTION AND MOTION TO QUASH OR AMEND SEARCH WARRANT; MEMO OF POINTS AND AUTHORITIES
Case No. 3-16-70816

1    Second, the Warrant is overbroad, vague, and lacking sufficient particularity, as it requests

2    all records from ▮ different Google services used by ▮ different users. Several of the services

3    are not actually services at all, however, while others have little-to-no relationship to one

4    another. This suggests that the government may not know what all of these services are or

5    whether the users in fact used them, let alone used them in a manner that may give rise to

6    probable cause to believe that records regarding their use would contain evidence of the alleged

7    wire fraud.

8    A.    **Google has fully complied with the Warrant, which only lawfully reaches data
           known to be stored within the United States.**
9

10    Google has already produced all records identified with sufficient particularity that are

11    responsive to the warrant. A warrant issued under the Stored Communications Act ("SCA"), 18

12    U.S.C. § 2701, *et seq.*, lawfully reaches only data stored within the United States. *See Microsoft*,

13    829 F.3d at 222 ("[T]he SCA does not authorize a U.S. court to issue and enforce an SCA warrant

14    against a United States-based service provider for the contents of a customer's electronic

15    communications stored on servers located outside the United States."). Google has already

16    produced all records that it can ascertain are stored within the United States. That is the extent of

17    the Warrant's ambit.

18    In *Microsoft*, a panel of the Second Circuit unanimously held that executing a warrant to

19    obtain data stored outside of the United States "would constitute an unlawful extraterritorial

20    application of the Act." 829 F.3d at 220. The court held that the SCA did not authorize the

21    government to compel a U.S. provider to produce electronic records stored in data centers outside

22    the United States. *See id.* at 210-21.[1] After all, the court observed, the SCA's "focus" is

23    primarily on protecting user privacy in stored electronic communications, not on law enforcement

24    needs. *See id.* at 221. As a result, the seizure of user information stored outside the United

25    States—regardless of the location of the user or of the service provider—occurs outside the

26

27    [1] Although the data at issue in *Microsoft* was stored abroad, Microsoft acknowledged it could use
      a "database management program" from within the United States to collect and produce "account
28    data that is stored on any of its servers globally." *Id.* at 203.

-4-

1   United States and thus constitutes an unlawful extraterritorial application of the SCA. *See id.* at

2   220.

3          The panel relied on established precedent that courts must presume that statutes (like §

4   2703 of the SCA) do not apply extraterritorially in the absence of an express indication from

5   Congress. *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct 2090, 2100 (June 20, 2016) ("Absent

6   clearly expressed congressional intent to the contrary, federal laws will be construed to have only

7   domestic application."); *Morrison v. National Australian Bank Ltd.*, 561 U.S. 247 (2010) (statute

8   must contain "a clear indication of extraterritorial application" in order to so apply). The panel

9   found that § 2703, which sets out the requirements the government must satisfy to compel the

10  production of user data from providers, contains "no such indication" of

11  extraterritoriality. *Microsoft*, 829 F.3d at 211. The panel further reasoned that by using the term

12  of art "warrant" in § 2703, Congress intended to impose all of the traditional limitations

13  associated with physical search warrants, including that they can only be executed in the United

14  States. *Id.* at 214-15 (finding "no reason to believe that Congress intended to jettison the

15  centuries of law requiring the issuance and performance of warrants in specified, domestic

16  locations, or to replace the traditional warrant with a novel instrument of international

17  application"); *see also F.A.A. v. Cooper*, 132 S.Ct. 1441, 1449 (2012) ("[W]hen Congress

18  employs a term of art, 'it presumably knows and adopts the cluster of ideas that were attached to

19  each borrowed word in the body of learning from which it was taken.'"). Further, the panel

20  agreed with courts throughout the country that the purpose of § 2703 is to protect user

21  privacy. *Microsoft* at 221; *see Sams v. Yahoo*, 713 F. 3d 1175, 1179 (9th Cir. 2013) (the purpose

22  of the SCA is "to protect the privacy of electronic communications" in part by "placing limits on

23  the government's ability to compel network service providers to disclose information they

24  possess about their customers and subscribers [via] 18 U.S.C. § 2703"); *see also U.S. v. Graham*,

25  824 F. 3d 421, 438 (4th Cir. 2016) (the SCA "creates a set of Fourth Amendment-like privacy

26  protections by statute") (quoting *Sams*); *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 791 (5th

27  Cir. 2012) ("Congress passed the SCA as part of the Electronic Communications Privacy Act to

28  protect potential intrusions on individual privacy . . . ."). Thus, the panel concluded that a warrant

-5-

1    purporting to permit the government to search data on a server located outside the United States is

2    an impermissible extraterritorial application of § 2703. *Id* at 221. The Second Circuit in

3    *Microsoft* is the only appellate court to address whether an SCA warrant may compel a provider

4    to disclose content stored outside the United States; the holding of that case should be applied

5    here. *See Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001) (finding the rationale of the

6    Second Circuit to be persuasive on matter of first impression in the Ninth Circuit).[2] The Warrant

7    therefore cannot compel Google to search, seize, and produce data in the subject accounts stored

8    outside the United States.

9        The Warrant also cannot reach records if it is unknown whether the records are located in

10   the United States. *See, e.g., In re Warrant to Search a Target Computer at Premises Unknown*,

11   958 F. Supp. 2d 753, 757-58 (S.D. Tex. 2013) (holding that a warrant cannot reach records the

12   location for which is unknown). Indeed, courts within this district have recognized that for

13   traditional search warrants issued pursuant to Fed. R. Crim. P. Rule 41, a magistrate judge lacks

14   authority to issue a search warrant for out-of-district property, even where the location of the

15   property was unknown at the time of issuance. *United States v. Henderson*, Case No. 15-cr-

16   00565, 2016 WL 4549108 at *3-4 (N.D. Cal. Sep. 1, 2016) (holding that a Virginia judge lacked

17   authority to issue a warrant to search property the location of which was unknown at the time of

18   issuance, and which was ultimately located in California); *see also* Fed. R. Crim. P. 41(b)

19   (defining territorial limits of search warrants to reach property within the district of the magistrate

20   or, in certain cases  not relevant here, the United States).[3] By producing the records known to be

21   stored in the United States, Google has fully complied with the Warrant.

22

---

[2] This would not be the first time the opinion of a single Circuit Court changed as a practical
matter the way courts and parties viewed the SCA. *See, e.g., United States v. Warshak*, 631 F.3d
266, 288 (6th Cir. 2010) (holding the Fourth Amendment requires the government to obtain a
warrant for communications content, notwithstanding section 2703 of the SCA).
[3] While Rule 41 was modified on December 1, 2016, to permit magistrate judges to issue
warrants to search out-of-district electronic information in certain circumstances not relevant
here, nothing in the amended Rule 41 contemplates a search of property that is or may be located
outside the country. As the Department of Justice acknowledged in a letter to Advisory
Committee on the Criminal Rules, "[i]n light of the presumption against international
extraterritorial application, and consistent with the existing language of Rule 41(b)(3), this
amendment does not purport to authorize courts to issue warrants that authorize the search of
electronic storage media located in a foreign country or countries." Letter from Mythili Raman,

1    The Warrant therefore compels Google to produce only data known to be stored within

2    the United States. *See Microsoft* at 222; 18 U.S.C. §§ 2701, 2703. Google has already produced

3    all records identified with sufficient particularity that it can ascertain are stored in the United

4    States. Google respectfully requests that the Court quash the Warrant to the extent it demands

5    that Google produce data that is not known to be located within the borders of the United States.

6    **B.      The Warrant is overbroad, lacks particularity, and cannot have been based on the
7           requisite showing of probable cause that each user used each service in a manner
           that would generate records likely to contain evidence of the crime under
8           investigation.**

9        The Warrant is also overbroad because it purports to require Google to search "all" data

10   "associated with" a laundry list of nearly every Google service, for every identified

11   account. These are the sorts of "catchall phrase[s]" and boilerplate descriptions, *United States v.*

12   *Clark*, 31 F.3d 831, 836 (9th Cir. 1994), that tend to reflect overbreadth and lack of

13   particularity. Google is concerned with respect to many of the services identified that the

14   magistrate issuing the Warrant may not have been "fully apprised of the scope of the search" and

15   could not have "[made] the determination that the search in all of its dimensions is based upon

16   probable cause and particular descriptions." *U.S. v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir.

17   1982). Although Google is not privy to the affidavit submitted in support of the Warrant

18   application, it seems unlikely that a single affidavit could support a finding of probable cause that

19   each of ▮ users used each of ▮ services in such a manner that the records of such use contain

20   evidence of the crime under investigation. The fact that a suspect used a Gmail address does not

21   establish probable cause to search the records of all of Google's other services, most of which are

22   stored independent of, and may have nothing to do with, Gmail records.

23       A court determines whether a warrant is overbroad by considering "whether probable

24   cause exists to seize all items of a particular type described in the warrant." *United States v.*

25   *Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). Applying these principles to the SCA warrant at

26   _____

27   Acting Assistant Attorney General, to Judge Reena Raggi, Chair Advisory Comm. on the
     Criminal Rules (Sep. 18, 2014) (available at https://www.justsecurity.org/wp-
28   content/uploads/2014/09/Raman-letter-to-committee-.pdf). Rule 41 accordingly makes clear that
     the government cannot obtain a search warrant to search property outside the United States.
     -7-

1  issue here, the government must establish probable cause for *each* user to search *each* Google
2  service for which it requests electronic records. *See United States v. Barthelman*, No. 13-10016,
3  2013 WL 3946084, at *11 (D. Kan. July 31, 2013) (warrants directed to Yahoo! and Apple were
4  overbroad "because they allow[ed] the search of all emails, pictures, friends and groups," even
5  when they "were limited to a specific account" and "a specific time frame"). Establishing
6  probable cause "that evidence of a crime would be found in the contents of email accounts" is not
7  sufficient to search other services. *See id.*

8      Even without the benefit of seeing the affidavit, it is clear there are deficiencies in the
9  probable cause showing behind the Warrant. Some of the "services" identified in the Warrant
10 either do not exist or do not hold data. For example GA Plus, Google Apps, Dasher Policy, and
11 the Apps Administrator Control Panel are not services or products offered by Google, but rather
12 account configuration settings related to enterprise accounts. They do not hold any specific type
13 of data. Moreover, *Google Talk* is a service that was shut down in early 2015.

14     For other services identified in the Warrant, including Google Maps, Google Sync,
15 Google Analytics, Webmaster Tools, and AdWords, it is not clear given the nature of the services
16 and the type of data associated with them what type of data is being sought (and the Warrant does
17 not specify). For example, a request for records associated with "Maps" could simply be a
18 request for records related to a user's map searches (which Google has already produced as a
19 subset of records for Search History), or such a request might refer to other records broadly
20 associated with "Maps," but held by Google in variety of different ways depending on the type of
21 data at issue, such as but not limited to records associated with custom maps, changes and edits to
22 public places, starred places or private labels, and saved locations. Each of these data types
23 requires a separate query to conduct a search of a separate database. Because the Warrant lacked
24 sufficient particularity for Google to craft such queries, Google has not produced "Maps" data, if
25 any, for the ___ accounts at issue. Analytics, meanwhile, is a service available to users that host
26 websites that provides details about the visitors to those websites (such as the number of visitors,
27 the referring websites, the regions where visitors are located, etc.) and allows the user to generate
28 reports. The bulk of "Analytics" data can only be accessed through the running of customized

-8-

1   reports that requires the entry of specific query parameters. The Warrant lacked specific

2   particularity as to what type of Analytics reports were being sought and without that information

3   it is impossible to run the reports. Neither Maps nor Analytics has a discrete set of "records"

4   clearly identified by the Warrant; instead, Google requires greater specificity about what,

5   precisely, is being sought in order to conduct a search for responsive records related to these

6   services.

7       The Warrant thus did not include direction "specific enough to enable the person

8   conducting the search to reasonably identify the things authorized to be seized." *Spilotro,* 800

9   F.2d at 963. Such specificity is important to guide the party conducting the search, to prevent

10   "rummaging through a person's belongings" and to "ensure[] that the magistrate issuing the

11   warrant . . . [has] accurately determine[d] whether the entire search is supported by probable

12   cause." *Id.* At the very least, the Warrant should identify those services, and the magistrate

13   should be made aware of the specific information sought.

14       Common sense dictates that the facts necessary to support probable cause to believe that

15   an email account contains evidence of a crime would differ from those necessary to support

16   probable cause to believe that web analytics or advertising records contain evidence of a

17   crime. That an individual has a Gmail account does not give the government carte blanche to

18   scour all Google services for other data the individual may have stored with Google, absent

19   probable cause that such data exists and constitutes fruits, evidence, or an instrumentality of a

20   crime. Indeed, it is not clear how probable cause could exist to search services when the

21   government does not know what those services are, or where they cannot identify what records

22   they hope to obtain. It is quite clear that the government used a boilerplate form warrant,

23   divorced from the facts of the case and the users at issue. In so doing, it failed to make the

24   requisite showing that there is probable cause to believe that each user used each service and that

25   each service likely contains evidence of the crime under investigation.

26       Because the Warrant does not identify with particularity the places to be searched and

27   items to be seized (and is presumably not supported by probable cause to believe that each user

28   used each service in such a manner that record relating to that service will contain evidence of the

1   crime) and is instead unconstitutionally overbroad, Google should not be compelled to produce

2   any further records until the government identifies the specific Google services for which it has

3   established probable cause to search.

4                              **IV.    CONCLUSION**

5          For the reasons stated above, Google respectfully requests that the Court quash the

6   Warrant to the extent it seeks to records that are or may be stored outside the United States, and

7   further to amend the Warrant to require Google to search users' records only when the

8   government has established probable cause that that user used that service in a manner that would

9   generate records that would contain evidence of the crime under investigation.

10

11  DATED:  December 6, 2016                          **PERKINS COIE** LLP

12                                                    By: _____

13                                                        Julie E. Schwartz

14                                                        JSchwartz@perkinscoie.com

15                                                        Attorneys for Google, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen, *pro hac vice pending*
THinnen@perkinscoie.com
John R. Tyler, *pro hac vice pending*
RTyler@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave. Suite 4900
Seattle, WA 98101
Tel.: (206) 359-8000
Fax: (206) 359-9000

Attorneys for Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of Content Stored at Premises Controlled by Google Inc. and Further Described in Attachment A | Case No. 3-16-70816 |
|---|---|
| | **Declaration of John R. Tyler in Support of Non-Party Google Inc.'s Motion to Quash or Amend Search Warrant and Administrative Motion to File Under Seal** |
| | Under Seal |
| | Judge:     Hon. Laurel Beeler, U.S. Magistrate Judge |

1    I, JOHN R. TYLER, declare and certify as follows:

2        1.    I am an attorney with the law firm of Perkins Coie LLP in Seattle, and am one of

3    the attorneys representing non-party Google Inc. in the above-entitled action. I have personal

4    knowledge of the facts set forth in this declaration and am competent to testify.

5        2.    Attached as Exhibit A is a true and correct copy of the search warrant ("Warrant")

6    and sealing order that Google received on July 2, 2016. The Warrant contains a nondisclosure

7    order that orders Google "not to disclose the existence of this search warrant and any document

8    relating to this search warrant to anyone other than Special Agents of [Homeland Security

9    Investigations] or other specified law enforcement officials." The sealing order requires the

10   "search warrant and supporting documentation (e.g., affidavit, attachments, exhibits) in the

11   above-entitled matter, together with the application and this Court's sealing order" to be filed

12   under seal.

13       3.    Attached as Exhibit B is a true and correct copy of the production letter that

14   Google sent to the government on September 30, 2016, accompanying a production to the

15   government responsive to the Warrant. The production letter stated that Google's production was

16   made consistent with the Second Circuit's decision in *Matter of Warrant to Search a Certain E-*

17   *Mail Account Controlled & Maintained by Microsoft Corp. (Microsoft)*, 829 F.3d 197 (2d Cir.

18   2016).

19       4.    On November 16, 2016, I spoke with Assistant United States Attorney William

20   Frentzen regarding Google's production. I informed AUSA Frentzen that Google intended to

21   produce additional records determined to be responsive and stored within the United States

22   forthwith, and further that Google would send a letter describing its production in detail. AUSA

23   Frentzen responded that the government disagrees with Google's interpretation of *Microsoft*, and

24   threatened to file a motion for an order to show cause if Google did not produce all records

25   sought by the Warrant, regardless of the location of those records, by the end of the week.

26       5.    Attached as Exhibit C is a true and correct copy of the cover letter Google sent on

27   November 18, 2016, accompanying a production to the government of the following additional

28   information responsive to the warrant:  header information associated with the emails that had

-2-

1  attachments, as well as the content of those email messages, but not the attachments themselves
2  (which were not confirmed to be stored in the United States).

3     6.    Attached as Exhibit D is a true and correct copy of the letter sent to AUSA
4  Frentzen by my colleague and Google co-counsel Todd Hinnen on November 21, 2016, detailing
5  Google's response to the Warrant.

6     7.    I am informed that on December 6, 2016, Mr. Hinnen AUSA Frentzen to confirm
7  whether, in light of Google's responses, the government would consider this matter resolved.  I
8  am further informed that Mr. Hinnen was unable to so confirm.

9     I declare under penalty of perjury that the foregoing is true and correct to the best of my
10 knowledge and belief.  Executed in Mountain View, California, on December 6, 2016.

11

12                                    By: _John R. Tyler_____
13                                        John R. Tyler

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

DECLARATION OF JOHN R. TYLER
Case No. 3-16-70816

# EXHIBIT A

AO 93 (Rev. 01/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

























# EXHIBIT B

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043



USLawEnforcement@google.com

www.google.com

September 28, 2016

*Via Law Enforcement Request System Only*
*michael.p.delaney@ice.dhs.gov*

Special Agent Michael Delaney
ICE
630 Sansome Street, Suite 720
San Francisco, CA 94111

> **Re: Search Warrant dated June 30, 2016 (Google Ref. No. 737303)**
> ***SF02UR16SF0014***

Dear Special Agent Delaney:

Pursuant to the Search Warrant issued in the above-referenced matter, and in accordance with state and federal law, including the Stored Communications Act (SCA), see 18 U.S.C. § 2701 et seq., Google has conducted a diligent search to identify responsive records stored on Google's U.S. servers. See *In Matter of Warrant to Search Certain E-Mail Account Controlled and Maintained by Microsoft Corporation*, __F.3d__, 2016 WL 3770056 (2d Cir. 2016) (the SCA does not authorize courts to issue and enforce against US-based service providers warrants for the seizure of information stored exclusively outside the United States). Enclosed herewith are records responsive to your request.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s)

selections in the Law Enforcement Request System. We have also included a signed Certificate of Authenticity which includes a list of hash values corresponding to each file. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

To the extent this production contains native Google Drive file types such as Google Docs or Sheets, those files were exported as an equivalent file type so that the files can be opened outside of the native Drive applications. In addition, non-Drive applications can integrate with Drive for file management purposes and in some cases these files cannot be exported. In such cases, the content file will contain a message to that effect.



Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

Secondary email address information is provided by the user and is generally not verified. Therefore, the fact that an account is listed as a secondary email address does not necessarily mean that that secondary account is under the control of the same user as the primary account.

Please note that Google Wallet service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

Regards,

Google Legal Investigations Support