BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
MERRY JEAN CHAN (CABN 229254)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6959
Fax: (415) 436-7234
William.Frentzen@usdoj.gov
Merry.Chan@usdoj.gov

ANDREW S. PAK (NYBN 4463436)
CATHERINE ALDEN PELKER (MD)
Trial Attorneys

Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Avenue, N.W., Suite 600
Washington, D.C. 20005
Andrew.Pak@usdoj.gov;
Catherine.Pelker@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In the Matter of the Search of Content Stored at Premises Controlled by Google, Inc., and Further Described in Attachment A | Case No. 3-16-mc-80263 RS<br><br>UNITED STATES' MOTION FOR CONTEMPT HEARING AND RESPONSE TO GOOGLE'S MOTION FOR AN ORDER OF CIVIL CONTEMPT |

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND....................2

ARGUMENT....................5

I. Although the Parties Do Not Dispute That Google Should be Held in Contempt, a Hearing is Required to Determine the Appropriate Sanction in this Matter....................5

II. Google's Reliance on Stipulations Entered in Other Matters in Other Circuits is Misplaced....................10

CONCLUSION....................11

## TABLE OF AUTHORITIES

Cases

*Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334 (9th Cir. 1985)....................8

*In re Search of Content Stored at Premises Controlled by Google Inc.*, No. 16-mc-80263, 2017 WL 3478809 (N.D. Cal. Aug. 14, 2017), aff'g 2017 WL 1487625 (N.D. Cal. Apr. 25, 2017)....................8

*In re Search of Information Associated with [REDACTED]@gmail.com that is stored at premises controlled by Google*, No. 17-7131MB (D. Ariz. Aug. 21, 2017)....................8

*In re Search of Information Associated with [redacted]@gmail.com Stored at Premises Controlled by Google, Inc.*, No. 16-mj-757, 2017 WL 3445634 (D.D.C. July 31, 2017), aff'g 2017 WL 2480752 (D.D.C. June 2, 2017)....................8

*In re Search of Information Associated with Accounts Identified as [redacted]@gmail.com*, No. 16-mj-2197, 2017 WL 3263351 (C.D. Cal. July 13, 2017)....................8

*In re Search Warrant No. 16-960-M-1 to Google*, 2017 WL 3535037, aff'g 232 F. Supp. 3d 708 (E.D. Pa. Feb. 3, 2017),,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,……..,,8

*In re Search Warrant to Google, Inc.*, No. 17-mj-532 (N.D. Ala. Sept. 1, 2017)………...………………8

*In re Search Warrant to Google, Inc.*, No. 16-4116, 2017 WL 2985391 (D. N.J. July 10, 2017)....................8

*In re Special Counsel Investigation*, 332 F. Supp. 2d 33 (D.D.C. 2004)....................6

*In re Two Email Accounts stored at Google, Inc.*, No. 17-M-1235, 2017 WL 2838156 (E.D. Wis. June 30, 2017)....................8

*Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016)....................1, 2, 3

*Microsoft Corp.*, 15 F. Supp. 3d 466 (S.D.N.Y. 2014)....................11

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992)....................6

*United States v. Martin*, No. 14-00678, 2015 WL 4463934 (D. Ariz. July 21, 2015) .............................. 8

Statutes

18 U.S.C. §§ 2703(e) .................................................................................................................. 8

28 U.S.C. § 1826(a) ............................................................................................................... 5, 6

Google, like any other person or entity, is entitled to have its own view of the law, and to press that view before a court of competent jurisdiction. However, when faced with a valid court order, Google, like any other person or entity, must either comply with such an order or face consequences severe enough to deter willful noncompliance. The issue before this court is what sanction is sufficient to achieve that goal. After the Second Circuit's decision in Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp., 829 F.3d 197 (2d Cir. 2016) ("Microsoft"), Google took it upon itself to hold that the Second Circuit's decision was the law of the land.[1] Indeed, as set forth in the various declarations filed by Google in this litigation, prior to the commencement of any litigation in any court outside of the Second Circuit, Google unilaterally decided to place a "moratorium" on responding to any process, from any court, that it believed was inconsistent with Second Circuit law. Thus, Google deliberately disobeyed orders from this Court and courts across the country, in the form of warrants issued pursuant to the Stored Communications Act ("SCA"), based on its own view of the law, and to the detriment of the criminal investigation associated with the warrant at issue here. Google's continued refusal to comply with this Court's August 14, 2017 order ("August 14 Order") to compel is merely an extension of its initial decision to flout the court-ordered disclosure contained in the warrant at issue here.

Google had the right to challenge the warrant. But Google did not have the right to usurp the role of the court by willfully disobeying the warrant ***before*** seeking and receiving judicial guidance. Moreover, in light of the significant resources Google concedes it expended on developing software specifically designed to allow it to disobey such orders here and around the country, and the fairly thin record as to the amount of money Google was willing to spend on implementing such software and the business reasons for making such expenditures, the Government requests a hearing to determine what would amount to an effective sanction on these facts.

/ /

---

[1] As detailed below, Google willfully disregarded the warrant at issue here for approximately six months, and did not move to quash the warrant until after it learned that the Government intended to file an order to show cause, all as a result of its significant efforts to re-design its compliance tooling to allow it to withhold information that might be held on one or more of its foreign servers.

## FACTUAL AND PROCEDURAL BACKGROUND

The warrant at issue here was served on Google on July 2, 2016, at a time when Google routinely complied with SCA warrants regardless of whether such warrants required the disclosure of information that Google stored on its foreign servers. Google's Memorandum of Points and Authorities in Support of Motion to Quash or Amend Search Warrant ("Google Mtn.") at 3; *see also* Declaration of Emily Guy in Support of Google, Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ("Guy Decl.") ¶ 7. The warrant itself called for execution by July 14, 2016 and production by Google "FORTHWITH." Declaration of HSI Special Agent Michael Delaney in Support of United States' Response to Google ("Delaney Decl.") ¶¶ 5-6; *see also* Declaration of Erica Furer in Support of Google, Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ("Furer Decl.") ¶ 18. There is no dispute that Google understood that the warrant called for the foreign-stored data at issue here. *See* Furer Decl. ¶ 20 (acknowledging that the warrant sought "any and all" records associated with the specified accounts).

Google admits that at that time it received the warrant, the tool it used to collect information responsive to SCA warrants "was data location agnostic; it did not identify where on Google's network data was stored, it identified and retrieved [responsive data] regardless of location." Guy Decl. ¶ 7. Indeed, Google notes that at that time, there "was no business reason for the export tool to determine the location of data." *Id.* On July 14, 2016, the Second Circuit issued the *Microsoft* decision, which held that a warrant issued pursuant to the SCA did not require Microsoft to produce the information it stored in its Dublin, Ireland data center. *See generally Microsoft*, 829 F.3d 197. That very day, Google placed a "moratorium on the processing of all search warrants, in response to the Second Circuit Decision," which included the warrant at issue here. Furer Decl. ¶ 12. Google at this point neither produced any responsive information nor did it seek an extension or other relief from the issuing magistrate judge.

During Google's moratorium, its existing tool was sufficient for it to disclose information responsive to the warrant. However, rather than produce the information called for by the warrant, it decided to undertake what it describes as a resource-intensive, complex, and coordinated engineering effort requiring thousands of man-hours, all so that it could parse out foreign-stored data and refuse to

produce it in the face of valid SCA warrants in every Circuit in the United States. Furer Decl. ¶ 13; Guy Decl. ¶¶ 22-23. Indeed, Google's efforts here "meant not only that the engineering team responsible for the data export tool had to put aside its preexisting business priorities, but also that the service system and product teams had to delay several of their business priorities to dedicate engineering resources to this project." Guy Decl. ¶ 12. Unsurprisingly, "[t]his level of commitment from this many teams was only possible because of the clear message from high-ranking executives at [Google] that this project was a top priority." *Id.* ¶ 13.

Despite what Google describes as a fairly intensive effort to create its new tooling, it recognized that "it would take several months to make significant progress on the development of long-term solutions to such a complex technical issue" and therefore, its "engineers worked with product teams to implement short-term solutions" for certain categories of data. Guy Decl. ¶¶ 14-15; Furer Decl. ¶ 14. Those short-term solutions, however, appear not to have been applied to the warrant at issue here. Indeed, Google did not disclose any responsive material to the Government until September 28, 2016, and again on November 18, 2016, well after Google "was able to develop and test tooling and workflow processes for at least some products and services" in early August 2016. Furer Decl. ¶ 16. It was at that time that Google decided to "lift[] the moratorium on processing search warrants." *Id.* In connection with Google's first partial production in September 2016, Google categorically and unilaterally indicated that it would not produce any of its foreign-stored data, citing the Second Circuit's decision in *Microsoft*. Delaney Decl. ¶ 8. On October 12, 2016, a Google employee reiterated Google's position in a phone call with law enforcement. *Id.*; *see also* Declaration of Acadia Senese in Support of Google Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition for Order to Show Cause ¶¶ 8-9.

On December 6, 2016, only ***after*** learning of the Government's "stated intention to seek an Order to Show Cause, Google filed" its motion to quash the warrant at issue here. Google Mtn. at 3. In May of 2017, Google stated in a letter to the government that it had additional responsive materials that it had determined were in the United States, a subject that the parties discussed with the Court during the oral argument on Google's motion – Google ***still*** has not provided those documents to the government. On

August 14, 2017, this Court ruled in favor of the Government and ordered Google to produce the foreign-stored information responsive to the warrant at issue.[2]

On August 31, 2017, the Government sent an email to Google's counsel indicating that Google had yet to produce any additional information, and had not indicated whether it would comply with this Court's order.[3] That same day, Google's counsel indicated that it had not yet determined whether or not it would comply with the August 14 Order. On September 1, 2017, Google's counsel indicated that Google decided to appeal this Court's order, and proposed entering into stipulations similar to ones it had

---

[2] Google notes that this Court recognized that "Google is proceeding in good faith in this litigation to seek clarity on an important legal issue." Non-Party Google Inc.'s Administrative Motion for an Order of Civil Contempt ("Google Contempt Mtn.") at 2. Google appears to refer to the following language in the August 14 Order:

> The government asks the court to issue an order to show cause why Google should not be held in contempt for refusing to comply with the search warrant and the magistrate judge's order. The government made a similar request to the magistrate judge and she declined to grant it. *See* Dkt. No. 31 ("The court is confident that the parties can work out their differences without court intervention but remains available to help if they cannot. The parties must raise any disputes via the joint letter process in the court's standing order, which is attached."). The government did not seek review of the magistrate judge's order, nor has it sought to avail itself of the joint letter process described in the standing order. Further, Google sought review of the magistrate judge's order less than one week after the magistrate judge issued her amended order. In light of the Second Circuit decision in *Microsoft* and the absence of relevant Ninth Circuit precedent, Google's diligent, good faith efforts to comply with current law do not warrant contempt at this stage of the proceedings.

August 14 Order at 8. This Court appears to have been persuaded by Google's briefing on that issue, quoting the same portion of Judge Beeler's order. *See* Google Inc.'s Reply in Support of Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge at 17. However, Judge Beeler's quoted statement did not relate at all to either (1) Google's delay in responding to the warrant at issue, or (2) Google's initial decision to apply the *Microsoft* decision to the warrant without first seeking judicial guidance. Indeed, Judge Beeler's statement related to an ancillary point raised by Google that some of the data called for the warrant simply did not exist. Judge Beeler explicitly limited her statement ordering the parties to "work out without court intervention" to the issue of whether "the search warrant asks for content that does not exist in the locations that the government specified" separate and apart from the issue of whether Google could be compelled "to disclose content that it stores outside the United States." *See* Dkt. No. 31; *see also* Furer Decl. ¶¶ 21-23 (describing the data Judge Beeler referenced in the order). The Government did not appeal that ruling simply because it did not seek data that does not exist. Moreover, the Government does not argue that Google acted in bad faith by appealing Judge Beeler's ruling on the issue raised in *Microsoft*; rather, it simply seeks an appropriate sanction for its decision to disobey the warrant without seeking judicial assistance, and for disobeying this Court's order compelling it to comply with that warrant.

[3] The email correspondence referenced herein is available for review at the Court's request.

entered into with the U.S. Attorney's Office for the District of the District of Columbia.[4] On September 6, 2017, counsel for the Government informed Google by email that it did not believe it could accept Google's proposed stipulation and continued to demand immediate compliance with the August 14 Order. On September 8, 2017, counsel for the Government and Google discussed the matter on a phone call. On that call, the Government indicated that it had no issue with Google seeking to appeal this Court's order in the Ninth Circuit, but that it was unwilling to enter into the proposed stipulation primarily because of its need for the information at issue, and the substantial amount of data that the Government believes was withheld. Counsel for Google proposed an alternative resolution; specifically, that either Google or the Government would move this Court to amend its August 14 Order to include a specific deadline for production, and that Google would produce such materials at some point after the deadline, but prior to any appeal, and agree to a sanction from this Court based on Google's untimely compliance with this Court's order. On September 12, 2017, Google's counsel indicated that Google would be unwilling to produce the materials called for in the August 14 Order at any time prior to seeking an appeal.

## ARGUMENT

### I. Although the Parties Do Not Dispute That Google Should be Held in Contempt, a Hearing is Required to Determine the Appropriate Sanction in this Matter

When a district court issues an order compelling a witness to disclose information, and the party refuses to comply with the order, the next step is for the court to issue an order to show cause why the recipient should not be held in contempt. In the context of a civil contempt sanction, a recipient ordinarily is afforded an opportunity to show "just cause" for its refusal to comply. *See* 28 U.S.C. § 1826(a). Here, because the Court has already rejected Google's extraterritoriality-based justifications for refusing to comply with the warrant, it follows that Google lacks "just cause" for its continued non-compliance. Therefore, the only disputed issue between the parties concern the nature of the sanctions that should be imposed. Indeed, Google has now requested that it be held in civil contempt, leaving open only the issue

[4] Copies of the stipulation and resulting order are attached as Exhibits C and D of the Declaration of John R. Tyler in Support of Google Inc.'s Administrative Motion for an Order of Civil Contempt. There, the parties did not agree to the disclosure of any additional information prior to an appeal, but stipulated to sanctions of $10,000 per day, which would be stayed pending the outcome of an affirmation by the Court of Appeals for the District of Columbia.

of what particular sanction is appropriate. Non-Party Google Inc.'s Administrative Motion for an Order of Civil Contempt ("Google Contempt Mtn.") at 2 ("Google … brings this motion to respectfully request that the Court enter the proposed Order finding Google in civil contempt, devise an appropriate sanction, and stay any sanctions during the pendency of Google's appeal.").

The customary sanction for an individual's refusal to comply with court-ordered disclosure is immediate imprisonment. *See* 28 U.S.C. § 1826(a). Because a corporate entity obviously cannot be imprisoned for its refusal to comply with a court order, the usual contempt sanction imposed against corporate entities is a fine. *See, e.g., In re Special Counsel Investigation*, 332 F. Supp. 2d 33 (D.D.C. 2004) (when Time magazine reporter refused to produce documents in response to grand jury subpoena, district court held Time and the reporter in civil contempt, imposed $1,000 daily fine against Time, and ordered the reporter summarily confined).

In assessing such a fine, "a district court should ordinarily take [the sanctioned entity's] financial position into account." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992). Indeed, in this Circuit, it is appropriate to consider whether the sanction would impact future compliance by the corporate contemnee and other similarly situated entities. *Cf. id.* at 1478 (holding that the imposition of sanctions against a foreign corporation greater than the amount at issue in the underlying matter appropriate in part because it would send "a clear statement that foreign corporations which avail themselves of business opportunities in the United States must abide by United States laws"). Moreover, that a contemnee willfully disobeys the court-ordered disclosure of documents in an effort to perfect a right to appeal should not impact the severity of the sanction. "It is well established that even the assertion of constitutional rights may be burdened by requiring those who assert them to risk contempt." *Id.* at 1480. While "[b]eing forced to disobey an order of the district court in order to obtain review of the court's ruling seems a harsh choice. That choice is compelled by the case law, however." *Id.*

Google's conduct here amounts to a willful and contemptuous disregard of various court orders culminating in this Court's most recent compulsion order. Google knew when it received the warrant on July 2, 2016, that it called for information that included information Google maintained in foreign data centers and that disclosure was required to be made "FORTHWITH." Google knew that a magistrate

judge in this Court reviewed and signed that warrant. Google knew that a magistrate judge may legally approve a warrant for an email account only if there is probable cause to believe that the email account contains evidence of a crime. Twelve days after Google received the warrant, the Second Circuit issued its opinion in *Microsoft*. At this point, Google had at least two options that would not amount to contempt—either fully comply with the warrant or seek judicial guidance on the issue raised in *Microsoft*. Instead, Google chose to place a moratorium on processing all warrants, from any district in the United States, including ones issued and received prior to the issuance of the Second Circuit's decision and in districts obviously not controlled by Second Circuit decisions.

Then, approximately three months after receiving the warrant, Google began to make a series of partial productions that did not include any information that it believed ***might***[5] be held outside of the United States. When the first incomplete production was made on September 28, 2016, Google pronounced that the Second Circuit's ruling governed the disclosures in its production letters, Delaney Decl. ¶ 8, without any judicial guidance from the issuing magistrate judge or from any other court in this Circuit.[6]

Even more alarming is the fact that Google went out of its way, spending thousands of man-hours and forgoing other engineering projects, all so that it would be positioned to refuse to disclose any of its foreign-stored data—or more precisely any data it could not confirm was held in the United States—***without seeking judicial relief or guidance***,[7] and without limiting its new tooling to be used for warrants

---

[5] In its motion, Google argued that the warrant at issue could not reach "records if it is unknown whether the records are located in the United States." Google Mtn. at 6. Presumably, this is because, as of January 2017, Google had not yet completed its effort to create a new tool that would allow it to identify the location of all of its data. Google Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ("Google Reply") at 15 ("Google has completed its solutions for several products (such as YouTube and Drive), and continues to develop solutions that it expects to be completed this year").

[6] Indeed, Google's Director of Law Enforcement and Information Security has publicly stated that Google would move to quash search warrants where it believed the scope of such process was broader than allowable under the law, and where the government would not agree to narrow the scope of such process. *See* Richard Salgado, *Government Hacking: Rule 41*, Panel on Amendments to Rule 41 Hosted by The Center for Internet and Society at Stanford Law School at 1:24:00-1:25:50, http://cyberlaw.stanford.edu/events/government-hacking-rule-41. Here, Google decided as early as July 14, 2016 that it would not provide foreign-stored information in response to any warrant issued pursuant to the SCA, yet it only moved to quash the warrant in December 2016 after learning of the government's intent to seek additional judicial assistance.

[7] Google has yet to convince a single federal judge that its view of the law is correct. *See In re*

issued out of the Second Circuit. In its briefing before the magistrate judge, Google not only touted its efforts in this regard, but went as far as arguing that "its efforts to develop capabilities that will enable it to fulfill this and other warrants go far beyond what is required by law and beyond what the government should reasonably have expected." Google Reply at 15. Although Google ultimately did move to quash the warrant at issue here, its motion was made approximately six months after it received the warrant, and only after learning that the Government intended to move for an order to show cause. Google Mtn. at 3.

Where a company makes a "conscious decision not to produce [court-ordered] documents that were within its 'control'" and such disobedience is not "created by circumstances beyond its control," such conduct "connotes deliberate malfeasance, [and] comports with traditional notions of willful action." *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1341 (9th Cir. 1985). Here, Google faced no exposure to civil liability for responding to the warrant at issue, *see* 18 U.S.C. §§ 2703(e), 2707(e), yet it declined to fully comply with the warrant based solely on another Circuit's law. In light of the SCA's protections in this regard, that Google nevertheless undertook what it describes as a massively resource-intensive effort just to flout warrants issued around the country, including the warrant issued here, shows contempt for this Court's order. Google admits that, prior to the *Microsoft* decision, it had no "business reason" to track the location of its data. Accordingly, understanding whether Google's decision to change

---

*Search Warrant to Google, Inc.*, No. 17-mj-532 (N.D. Ala. Sept. 1, 2017); *In re Search of Information Associated with [REDACTED]@gmail.com that is stored at premises controlled by Google*, No. 17-7131MB (D. Ariz. Aug. 21, 2017); *In re Search Warrant No. 16-960-M-1 to Google*, 2017 WL 3535037, at *11, aff'g 232 F. Supp. 3d 708 (E.D. Pa. Feb. 3, 2017); *In re Search of Content Stored at Premises Controlled by Google Inc.*, No. 16-mc-80263, 2017 WL 3478809, at *5 (N.D. Cal. Aug. 14, 2017), aff'g 2017 WL 1487625 (N.D. Cal. Apr. 25, 2017); *In re Search of Information Associated with [redacted]@gmail.com Stored at Premises Controlled by Google, Inc.*, No. 16-mj-757, 2017 WL 3445634, at *27 (D.D.C. July 31, 2017), aff'g 2017 WL 2480752 (D.D.C. June 2, 2017) ("*DDC Decision*"); *In re Search of Information Associated with Accounts Identified as [redacted]@gmail.com*, No. 16-mj-2197, 2017 WL 3263351, at *9 (C.D. Cal. July 13, 2017); *In re Search Warrant to Google, Inc.*, No. 16-4116, 2017 WL 2985391, at *12 (D. N.J. July 10, 2017); *In re Two Email Accounts stored at Google, Inc.*, No. 17-M-1235, 2017 WL 2838156, at *4 (E.D. Wis. June 30, 2017); *In re Search of Premises Located at [Redacted]@yahoo.com*, No-17-mj-1238 (M.D. Fla. Apr. 7, 2017), slip op. 3. Although these decisions were issued after the commencement of the underlying litigation here, the only guidance on the issues addressed by *Microsoft* in the Ninth Circuit at that time was District of Arizona decision holding that the SCA properly reached foreign-stored data. *See United States v. Martin*, No. 14-00678, 2015 WL 4463934, at *3 (D. Ariz. July 21, 2015) (denying the defendant's motion to suppress information obtained from Facebook and Twitter where they did not disclose the location of their servers, because "[t]he SCA warrants . . . sought information plainly under the control of two United States corporations").

its tooling was driven by, among other things, a business decision—apparently directed by "high-ranking executives at [Google]," Guy Decl. ¶ 13—to maintain a competitive advantage with certain potential customers, is crucial to determining what would be sufficient to cause them to comply with any warrant or compulsion order, including the ones issued here. Additionally, understanding just how much Google was willing to spend in its effort to create that tooling provides much needed context in fashioning an effective sanction here.

Furthermore, Google states that it "will continue to preserve information in its possession that is called for by the warrant but stored outside of the United States …." Google Mtn. at 2. However, Google has already indicated in connection with other matters that it did not begin preserving data that it withheld from productions following its moratorium until some time in November 2016. Accordingly, while the Government believes that Google continues to preserve information called for by the warrant at issue here, it has a legitimate concern that Google did not preserve such information at or around the time it received the warrant on July 2, 2016 or when it made its initial production on September 28, 2016. As a result, there is a significant risk that information Google was required to disclose pursuant to the warrant was deleted by the various accountholders as a result of Google's delays in responding to the warrant.

Accordingly, the Government moves this Court to hold a hearing[8] to determine the following:

(1) Who at Google was responsible for ordering Google's compliance team to place a moratorium on processing search warrants on or about July 14, 2016.

(2) Who at Google was responsible for determining that Google would preemptively refuse to disclose information responsive to search warrants issued outside of the Second Circuit without first seeking judicial relief.

(3) What business reasons, if any, Google identified or relied on when deciding to unilaterally apply the Second Circuit's *Microsoft* decision nationwide.

(4) Whether all of the data responsive to the warrant as of July 2, 2017, regardless of where it was stored, has been and continues to be preserved by Google.

[8] The Government seeks only a hearing at this point, as opposed to trial for criminal contempt pursuant to Rule 42 of the Federal Rules of Criminal Procedure, because the record at this stage is insufficient to determine whether a trial for criminal contempt is warranted.

(5) How much Google spent, including payment for man-hours spent and the costs associated with deprioritizing its other engineering projects, in order to create the tooling it used to segregate and withhold information that it could not confirm was maintained or held in the United States.

(6) With respect to the tooling it used to identify the location of its data, at all times between July 2, 2016 and December 6, 2016, what types of data was Google able to identify a location for and what types of data was it unable to do so.

(7) Whether Google's tooling allows it to determine the location of data at the time of query, or whether it allows Google to determine the historical location of such data so that it could determine whether any data responsive to the warrant at issue here was stored domestically at any time since July 2, 2016.

(8) To the extent that projected litigation costs associated with moving to quash warrants issued outside of the Second Circuit informed Google's decision to refuse to fully comply with such warrants, the projections for such costs, if any, associated with such litigations.

## II. Google's Reliance on Stipulations Entered in Other Matters in Other Circuits is Misplaced

Google argues that "[t]here is no sound basis for the government to break with its past practice in this matter" of entering into "a stipulation with stayed sanctions" in order to facilitate an appeal. Google Contempt Mtn. at 5. First, the Government has not entered into any stipulations with Google in ***this*** matter. As Google notes, a stipulation has been entered into in the District of the District of Columbia; however, that case involved a different warrant, a different amount of data withheld by Google, and different equities. For instance, here, the warrant relates to 22 separate accounts, and was issued and received by Google before the *Microsoft* decision was issued. Here, the warrant was received by Google before it placed its "moratorium" on processing search warrants, yet it decided to retroactively apply that to the warrant at issue here. Here, Google filed declarations outlining the resources-intensive efforts it undertook to avoid complying with any and all warrants it received.

Additionally, while Google seeks to facilitate an appeal in the Ninth Circuit, it has already indicated that it will seek to appeal the *DDC Decision*, which is the first of three District Courts to have

ruled on the applicability of the *Microsoft* decision to Google outside of the Second Circuit. That the Government has entered into a stipulation in connection with the *DDC Decision* to potentially facilitate an appeal does not mean it should be bound by its decision to seek a hearing in this District. Indeed, had the Government refused to enter into stipulations with Google in connection with both the *DDC Decision* and this Court's order, Google would have no doubt accused the Government of attempting to prevent Google from seeking any appellate guidance. It is not. That the Government seeks a hearing does not prevent Google from seeking appellate review after it is sanctioned. The Government merely seeks to develop the record here to determine the appropriate sanction for its willful disregard of this Court's order.

Finally, Google also notes that the "government agreed to a … stipulation in the *Microsoft* case," that is similar to the sanction Google proposes here. However, in the Second Circuit matter, Microsoft proceeded by moving to quash two weeks after the warrant in that matter was issued, a far cry from Google's conduct here.[9]

## CONCLUSION

In light of all of the foregoing, the United States moves this Court to (1) hold Google in contempt and (2) hold an evidentiary hearing to determine the appropriate sanction for Google.

Dated: September 20 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

____________/s/_______________
WILLIAM FRENTZEN
MERRY JEAN CHAN
Assistant United States Attorneys

ANDREW S. PAK
CATHERINE ALDEN PELKER
Trial Attorneys

[9] A redacted version of Microsoft's motion to quash is attached hereto as Exhibit A. Although this redacted filing was filed on the docket in April 2014, the motion itself is dated December 18, 2013. *See also In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, Case No. 13-mj-2814 (S.D.N.Y. Apr. 25, 2014) (ECF No. 6). The warrant in that matter was issued on December 4, 2013. *See In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 15 F. Supp. 3d 466, 467 (S.D.N.Y. 2014).