BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA VALLIERE (CABN 147374)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
MERRY JEAN CHAN (CABN 229254)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6959
Fax: (415) 436-7234
William.Frentzen@usdoj.gov; Merry.Chan@usdoj.gov

ANDREW S. PAK (NYBN 4463436)
CATHERINE ALDEN PELKER (MD)
Trial Attorneys

Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Avenue, N.W., Suite 600
Washington, D.C. 20005
Andrew.Pak@usdoj.gov; Catherine.Pelker@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In the Matter of the Search of Content Stored at Premises Controlled by Google, Inc., and Further Described in Attachment A | ) | Case No. 3-16-mc-80263 RS<br><br>**UNITED STATES' REPLY TO NON-PARTY GOOGLE LLC'S OPPOSITION TO THE UNITED STATES' MOTION FOR CONTEMPT HEARING** |

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT.........................................................................................................................3

I. Google Mischaracterizes the Government's Request for an Evidentiary Hearing as a Motion for Reconsideration ....................................................................................3

II. Google Does Not Dispute the Relevance of its Conduct Leading Up to the August 14 Order in Fashioning an Appropriate Sanction ...........................................................4

CONCLUSION......................................................................................................................9

## TABLE OF AUTHORITIES

Cases

*In re Search of Content Stored at Premises Controlled by Google Inc. and Further Described in Attachment A*, 2017 WL 3478809 (N.D. Cal. August 14, 2017)............................................. 1

*Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334 (9th Cir. 1985)....................................... 9

*In re Search Warrant No. 16-960-M-1 to Google*, 2017 WL 3535037, 232 F. Supp. 3d 708 (E.D. Pa. Feb. 3, 2017) ..................................................................................................... 6

*In re Special Counsel Investigation*, 332 F. Supp. 2d 33 (D.D.C. 2004)...................................... 9

*In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016) ........................................................................................ 1

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).......................... 7

Statutes

18 U.S.C. §§ 2702, 2703 .............................................................................................................. 9

## INTRODUCTION

Google LLC ("Google") and the Government ***both*** request that this Court hold Google in contempt for violating this Court's order, *In re Search of Content Stored at Premises Controlled by Google Inc. and Further Described in Attachment A*, No. 16-mc-80263-RS, 2017 WL 3478809 (N.D. Cal. August 14, 2017) (the "August 14 Order"), requiring it to disclose certain information responsive to a warrant issued under the Stored Communications Act ("SCA"). However, Google urges this Court to issue a sanction that Google has posited as sufficient, and further argues that this Court should not even develop a factual record sufficient to show whether Google will ultimately comply with the August 14 Order. Google argues that the sanction itself just needs to be set, and that there doesn't need to be any factual inquiry because Google views that sanction solely as a precondition to an appeal to the Ninth Circuit. The impact of Google's non-compliance to the case at hand is not of significance to Google. Indeed, after the August 14 Order was issued, Google's attorneys proposed a solution that would result in a sanction against Google, while nevertheless allowing Google to disclose the information at issue prior to taking an appeal. Google ultimately declined to pursue that option without further explanation. Google nevertheless assures this Court that whatever amount it has suggested will surely be enough: If the Ninth Circuit reverses, then the issue is moot because Google will not have to pay the sanction; if the Ninth Circuit affirms, then Google will comply with the order. It is, of course, a valid court order.

But so was the warrant at issue here. It was and is a valid court order that required Google to disclose any and all responsive information in its possession, custody, or control. Google understood the warrant's requirements, but declined to comply. More precisely, Google took the position that while the warrant looked like a "valid" court order, it was not as a matter of law. It drew that conclusion from its own reading of *In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016) ("*Microsoft*"), which Google "held" should be applied in the Ninth Circuit and regardless of certain distinguishing factual circumstances—*e.g.*, Microsoft knew all of its data was in Ireland and Google did not know where in the world its responsive data was stored. Google did not pursue a test case; it simply declined to fully comply with warrants issued under the SCA here and in every other

district in the country. In this regard, Google took on the role of deciding what is and what is not a "valid" court order. What prevents Google from doing the same in connection with the August 14 Order if its appeal is unsuccessful? We do not know.

While it is unclear why Google initially took it upon itself to "invalidate" court orders outside of the Second Circuit, we do know that Google was willing to spend significant resources in its effort to do so. Understanding the nature and scope of Google's motivation in this regard would clearly be relevant to determining what type of sanction would be effective in ensuring that Google ultimately complies with the August 14 Order. But Google objects. Not on the grounds that the Government has the facts wrong, and not on the grounds that Google's motivation behind unilaterally deciding it need not comply with the warrant at issue here and other warrants around the country is somehow irrelevant to identifying a sufficient sanction. Instead, Google claims that the Government cannot re-litigate issues that have already been addressed by the Court. Of course, Google's untimeliness in responding to the warrant was raised by the Government throughout the course of this litigation, but that certainly does not mean that now that both parties agree that a finding of contempt is appropriate, that those facts are somehow off limits in addressing the question of identifying an appropriate sanction for that contempt. The Court can, and should, make that inquiry at this time.

Notably, the two holdings Google argues as essentially foreclosing any further inquiry into appropriate sanctions, were either related to a completely separate legal issue, or, with respect to the August 14 Order, was specifically limited to "contempt ***at this stage of the proceedings***." August 14 Order at 8 (emphasis added). We are now at the stage where the parties agree that a finding of contempt is appropriate, and the only question is whether this Court should develop a factual record on the amount needed to ensure compliance or simply agree to the sanctions proposed by Google without further inquiry. As further detailed below, without its procedural argument, Google makes no showing that the sanctions that it proposes are sufficient to ensure compliance with the August 14 Order, and no basis to suggest that further fact-finding should be avoided.

Finally, Google's argument demonstrates that it has no interest in the impact its decisions have had on real life investigations where independent magistrates have determined that the government has demonstrated probable cause to believe that the data would assist in solving and stopping criminal activity, sometimes ongoing. Because the government has met the Constitutional and statutory requirements for disclosure, this ruling is not about privacy. Google is relying solely on the location of its data, selected because of its business model, and procedure. Google's interest in further appellate guidance without making a disclosure should not override—without a hearing—this Court's ability to determine the costs of Google's voluntary non-compliance to law enforcement and the communities it attempts to protect. The weighing of those countervailing interests is exactly the type of issue that the Court is suited to address.

## ARGUMENT

### I. Google Mischaracterizes the Government's Request for an Evidentiary Hearing as a Motion for Reconsideration

Google argues that it should be held in contempt for its decision not to comply with the August 14 Order. The Government agrees. The only remaining issue is the factual question of what form and amount of sanction would be effective in compelling Google to comply with that order. Of course, Google's past behavior manifesting its willingness to spend significant resources in order to disregard valid court orders is relevant to the question of what sort of penalty would be sufficient to deter Google from doing so again in this matter. For instance, an evidentiary hearing is necessary to determine the nature of Google's motivations in deciding not to comply with valid search warrants without first seeking judicial relief. If Google's conduct were motivated by profit, *i.e.*, a desire to maintain or grow its market dominance by publicly demonstrating its unwillingness to comply with facially valid warrants, then understanding that would be crucial to understanding what would prevent it from continuing to disregard this Court's orders.

Google, unsurprisingly, urges this Court to ignore its past behavior in connection with the warrant at issue. In an apparent effort to avoid dealing with the clear relevance of such behavior, Google warps the prior holding of this Court and the magistrate judge in order to avoid

substantively responding to the Government's argument. This Court held, in the August 14 Order, that Google's conduct did "not warrant contempt ***at this stage of the proceedings***." August 14 Order at 8 (emphasis added). The Government does not seek reconsideration of that ruling. Indeed, that ruling is completely consistent with the Government's request that Google's conduct, and the motivations behind it, be examined at the ***current stage of the proceedings***—after the basis for Google's refusal to comply with prior court orders has been undermined, after all parties agree that some sanction is required, and in connection with efforts to compel compliance with the August 14 Order itself. Accordingly, Google's attempt to recast the August 14 Order as delineating what this Court should consider in fashioning an appropriate sanction for Google's current decision to violate that order simply misses the mark.

The Government also does not seek reconsideration of Magistrate Judge Beeler's order, which related to the entirely separate question of whether the parties should come to a mutual agreement on the question of certain types of data that Google had indicated did not exist. *See* United States' Motion for Contempt Hearing and Response to Google's Motion for an Order of Civil Contempt ("Gov't Contempt Mtn.") at 4 n.2. Apparently unable to even find language in Magistrate Judge Beeler's order that it could use to recast that holding, Google merely asserts that the "government seeks to marginalize the Court's prior ruling in a footnote." Non-Party Google LLC's Opposition to the United States' Motion for Contempt Hearing and Response to Google's Motion for an Order of Civil Contempt ("Google Resp.") at 7. But Google knows the issue Judge Beeler addressed, and understands that it was unrelated to the issue raised in *Microsoft*. *Compare id.* at 1 n.1 ("In addition to this primary basis for the motion to quash [, that is, the *Microsoft* decision], Google also asserted that the warrant was vague and overbroad with respect to information relating to certain of Google's services."), *with* Dkt. No. 31 *and* Declaration of Erica Furer in Support of Google, Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ¶¶ 21-23.

**II. Google Does Not Dispute the Relevance of its Conduct Leading Up to the August 14 Order in Fashioning an Appropriate Sanction**

Google's affirmative statements, as well as its omissions, speak to why it attempts to avoid a hearing on procedural—as opposed to substantive—grounds. First and foremost, the Government laid out eight factual issues that are relevant to the question of what an effective sanction would require. *See* Gov't Contempt Mtn. at 9-10. Google does not dispute the relevance of each of these issues, but instead states that "[m]any," ***though not all***, "of the government's questions (e.g., the identities of individual employees) bear no apparent relation to whether a sanction is appropriate and how large any sanction should be." Google Resp. at 5 n.4. Only the first two of the eight factual issues relate to the identities of individual employees; those questions precisely relate to identifying witnesses with sufficient knowledge to address issues of why Google unilaterally decided to place a moratorium on processing warrants on July 14, 2016, and why Google decided to interpret the law in a manner that conflicted with a valid court order and acted on that interpretation without first seeking judicial guidance. Both of these questions certainly relate to Google's past conduct, but understanding Google's motivations and willingness to violate past court orders should certainly factor in determining what sort of sanction would prevent Google from doing so in the present case. Indeed, Google provides no reason or argument as to why these issues would not be relevant to determining how large any sanction should be.

Instead, Google, while refusing to address those questions head on, attempts to address them by alluding to facts in a misleading fashion in the introduction to its response. Google states:

> Beginning the very same day the *Microsoft* decision was handed down, Google engaged the government, through both the Department of Justice's Computer Crime Section and the United States Attorney's Office, regarding the impact of *Microsoft* on Google and its network. When it became clear that Google and the government could not resolve this matter without litigation, Google filed a motion to quash the search warrant to the extent it purported to require the production of documents stored outside the United States.

*Id.* at 1. The relevance of the above-quoted language is premised on the suggestion that Google told the Government that it intended to place a moratorium on warrants, and that the Government tacitly consented. This is untrue.[1] The above-quoted language further suggests that Google

[1] Even the initial declarations filed by Google do not make so broad a claim. *See* Declaration of

worked with the United States Attorney's Office to come to some sort of compromise. Again, untrue.[2] If Google truly claims that it understood that it had some sort of agreement with any part of the Government to refuse to fully comply with valid warrants issued under the SCA outside of the Second Circuit, which would be relevant to the question of what an appropriate sanction should be, it should produce a witness to that effect.[3]

---

Todd Hinnen in Support of Google Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ("Hinnen Decl.") ¶ 3 (describing discussions with the Department of Justice's Computer Crime & Intellectual Property Section without any indication that any Government employee had been informed that Google placed a moratorium on processing all warrants or that any such employee represented that her or she agreed that Google should or could refuse to respond to valid warrants without moving to quash such process); Declaration of Acadia Senese in Support of Google Inc.'s Reply in Support of Motion to Quash or Amend Search Warrant and Opposition to Motion for Order to Show Cause ("Senese Decl.") ¶¶ 4-6 (same).

[2] As set forth in Google's declarations and briefing, a Google representative had a discussion with some AUSA from this District on September 2, 2016, but in connection with an entirely unrelated matter about Google's decision to apply the *Microsoft* decision nationwide. Senese Decl. ¶ 7. That same representative later told Special Agent Michael Delaney, in connection with the warrant at issue here, that "given the Second Circuit's Decision, the government's search warrant ***could not compel*** Google to produce [foreign-stored] data." *Id.* ¶ 8. Google's position was abundantly clear at this time, and there was no indication that Google invited any further discussion regarding how it decided to interpret the *Microsoft* decision outside of the Second Circuit. The Hinnen declaration likewise does not suggest any efforts to reach a compromise with any Government attorney in this District. It refers to a letter sent on November 21, 2016, months after the warrant was served on Google and after Google conveyed its position that it would not disclose any of its foreign-stored data (or more precisely, data for which Google had no reliable location information), in response to the warrant. Hinnen Decl. ¶ 4. Then, apparently learning of the Government's decision to move to compel the disclosure of information responsive to the warrant, *see* Gov't Contempt Mtn. at 3, Google attempted to "resolve [the issue] through discussions" by leaving a voicemail ***on the day that Google filed*** its initial motion. Hinnen Decl. ¶ 5.

[3] In the very next paragraph of its introduction, Google states that "[u]nlike United States Attorneys' Offices in more than half a dozen other districts in which similar litigation has proceeded, the government here has sought throughout this litigation to have Google sanctioned for contempt, citing unrelated, long-since resolved matters between Google and the government." Google Resp. at 1. What Google leaves out is that the other litigations it refers do not involve warrants that were issued and received by Google prior to the *Microsoft* decision, do not involve similar delays, and, most importantly, ended with Google actually disclosing the information sought by the Government. Google also states the following: "As it did in two other circuits, Google proposed to the government that the parties enter into a stipulated order finding Google in contempt with a stay of sanctions, which would permit Google to perfect its right to appeal and to move the matter expeditiously toward ultimate resolution." Google Resp. at 2. This statement appears to suggest that Google has proposed stipulations similar to what it proposed here in two other litigations. That is not the case. Google has only entered into a similar stipulation in the District Court for the District of Columbia. It has not, for example, attempted to enter into a similar stipulation in connection with the decision, *In re Search Warrant No. 16-960-M-1 to Google*, 2017 WL 3535037, at *11, aff'g 232 F. Supp. 3d 708 (E.D. Pa. Feb. 3, 2017), issued in the Eastern District of Pennsylvania.

As for Google's current motivation for violating the August 14 Order, Google assures the Court that "there is no need for a hearing because there is no dispute: Google has not complied with the August 14 Order (and does not intend to do so) because compliance would risk undermining appellate jurisdiction." Google Resp. at 9 n.6.[4] But, of course, there is a dispute as to Google's motivation: Google simply argues that this Court should accept its proffered motivation and eschew factual inquiry into any others. Without any evidence as to Google's baseline motivation for its conduct leading up to the August 14 Order, as well as its current motivation for violating that order, Google's claim is unfounded. For instance, might Google intend to use its refusal to comply to make a statement that would help its marketing efforts in foreign countries or would otherwise benefit its profits?[5] Without first understanding such motivation and the extent of such potential profits, it is impossible to fashion a sanction that would overcome such motivations if they persist through a potential affirmation. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) ("a district court should ordinarily take [the sanctioned entity's] financial position into account"). Accordingly, further fact finding is required. Instead, Google attempts to avoid any such inquiry, asking this Court to simply accept that it will eventually do what it is ordered to do, despite all of its prior conduct suggesting otherwise. Yet Google's assertion about its motivation for violating the August 14 Order is a tacit admission that its motivation *is* relevant to the sanction it should receive. Google is only half right: Its motivation for violating this Court's Order is certainly relevant to the sanction it should receive, though the fact that it is attempting to perfect an appeal is not. Google's response ignores the *Richmark* case, which held that a company's desire to perfect an appeal is not a factor in determining the appropriate amount of a sanction. *Id.* at 1480.[6]

---

[4] In the same footnote, Google argues that the Government should have asked for an evidentiary hearing in a response to Google's Administrative Motion for an Order of Civil Contempt ("Google Contempt Motion"). *Id.* The Government did, in fact, raise its request in its motion, which was also a response to Google's initial motion that Google be held in contempt. The Government, therefore, interprets Google's most recent response as a reply to the Government's response to Google's initial motion, and a response to the Government's motion for a contempt hearing.

[5] For example, Google has obviously spent some time and money marketing to users how they make efforts to limit the scope of search warrants issued by Courts and received by Google. "*Way of a Warrant*," https://www.youtube.com/watch?v=MeKKHxcJfh0

[6] Here, too, with respect to its claimed motivation of simply trying to perfect an appeal, Google

Google's response is also silent as to the question of whether it preserved information responsive to the warrant that is the subject of this litigation. As noted in the Government's motion, "Google has already indicated in connection with other matters that it did not begin preserving data that it withheld from productions following its moratorium until some time in November 2016." Gov't Contempt Mtn. at 9. Google's failure to even preserve information it declined to disclose in response to the warrant at issue here is supported by one of its own declarations. On October 12, 2016, over three months after Google received the warrant, a Google representative suggested that Special Agent Michael Delany issue new preservation letters (or extension letters) for the accounts at issue. *See* Senese Decl. ¶¶ 8-11. That declaration further suggests that the information that was withheld by Google was preserved on October 12, 2016, but says nothing about whether such information was preserved during the three month period since the warrant was served, during Google's moratorium on processing any SCA warrants, or even the period between September 28, 2016, the date of Google's first partial production of information, and October 12, 2016. *Id.* ¶ 11. Google, however, does not even dispute the Government's concern that "there is a significant risk that information Google was required to disclose pursuant to the warrant was deleted by various accountholders as a result of Google's delays in responding to the warrant." Gov't Contempt Mtn. at 9. It only broadly asserts that the

---

makes a number of false assertions. First, Google claims that the "government here refused to enter into a stipulation, delaying resolution of this matter, so that it could recycle arguments … that Google should be sanctioned." Google Resp. at 2. However, as indicated in the Government's motion, Google had not even decided whether it would comply with the August 14 Order as of August 31, 2017. Gov't Contempt Mtn. at 4. When the attorneys for the Government and Google later engaged on the question of what sanctions would be appropriate, the parties discussed an alternative stipulation that would allow the Government to receive the information at issue, yet allow Google to seek appellate review in the Ninth Circuit. *Id.* at 4-5. It was after Google refused to consider that option that Google filed its motion that it be held in contempt. *Id.* Second, Google's response also appears to suggest that the Government is determined that any stay of sanctions is inappropriate and that it is attempting to prevent Google from appealing the August 14 Order. Google Resp. at 3 ("There is no basis to impose immediately effective sanctions to compel Google to forgo its good-faith effort to appeal a complex and contested issue of law."). That is not the case, the Government seeks only to develop a factual record to identify a sufficient sanction. It does not argue that that sanction, whatever it may be, must be immediate. It is also not attempting to prevent Google from seeking appellate review in the Ninth Circuit. As indicated in its moving papers, "[t]hat the Government seeks a hearing does not prevent Google from seeking appellate review after it is sanctioned." Gov't Contempt Mtn. at 11.

Government "does not direct the Court to any material facts that the Court declined to consider." Google Resp. at 7.[7]

Finally, in a footnote, Google attempts to distinguish both *In re Special Counsel Investigation*, 332 F. Supp. 2d 33 (D.D.C. 2004) and *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334 (9th Cir. 1985) by arguing that neither of the contemnees in those cases "are bound by a federal criminal law prohibiting disclosure of the information that the government sought." Google Resp. at 7 n.5. But neither was Google. To the extent that Google is referring to the prohibitions outlined in Section 2702 of the SCA, such prohibitions do not apply when dealing with legal process issued under Section 2703. *See* 18 U.S.C. §§ 2702(b)(2), 2702(c)(1), 2703(e). These provisions buttress the notion that it is up to the courts—that are required to authorize or deny applications for warrants and other court orders under Section 2703—and not providers, to determine whether a particular disclosure is required.

**CONCLUSION**

In light of all of the foregoing, the United States moves this Court to (1) hold Google in contempt and (2) hold an evidentiary hearing to determine the appropriate sanction for Google.

Dated: October 11, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

______/s/______________________
William Frentzen
Merry Jean Chan
Assistant United States Attorneys

Andrew S. Pak
Catherine Alden Pelker
Trial Attorneys

---

[7] This is not to suggest that the Court should accept Google's characterization of the Government's motion as a motion for reconsideration. As addressed above, this is relevant to the question of what would amount to an appropriate sanction to compel Google's compliance with the August 14 Order. Understanding whether Google even preserved the information it chose not to disclose based on out-of-Circuit law is relevant to understanding whether Google truly was attempting to seek guidance from the courts, as it now claims it is doing with respect to the Ninth Circuit, or whether other motivations were paramount.