Pages 1 - 52

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG

IN THE MATTER OF THE SEARCH OF    )
CONTENT STORED AT PREMISES        ) No. 16-MC-80263 RS
CONTROLLED BY GOOGLE, INC.        )
                                  ) San Francisco, California
                                  ) Monday
                                  ) October 16, 2017
_____ ) 10:00 a.m.


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For the United States:**    U.S. ATTORNEY'S OFFICE
                              450 Golden Gate Avenue
                              11th Floor
                              San Francisco, California 94102
                        BY:   **WILLIAM FRENTZEN, ESQ.**
                              **MERRY JEAN CHAN, ESQ.**


                              U.S. DEPARTMENT OF JUSTICE
                              Criminal Division
                              13021 New York Avenue, NW
                              Suite 600
                              Washington, DC 20005
                        BY:   **ANDREW SUN PAK, ESQ.**



**For Google:**               PERKINS COIE, LLP
                              1201 Third Avenue
                              Suite 4900
                              Seattle, Washington 98101
                        BY:   **TODD M. HINNEN, ESQ.**



*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

1    <u>**Monday - October 18, 2017**</u>                              <u>**10:07 a.m.**</u>

2                        P R O C E E D I N G S

3                          ---oOo---

4          **THE CLERK:**  Calling Case 16-MC-80263, In The Matter

5    of the Search of Google.

6        Counsel, please state your appearances.

7          **MR. FRENTZEN:**  Good morning, your Honor.  William

8    Frentzen, Merry Jean Chan and Andrew Pak for the Government,

9    Mr. Pak is here from DOJ, but I think the Court is familiar

10   with him by now.

11       Thank you.

12         **THE COURT:**  Good morning.

13         **MR. HINNEN:**  Good morning, your Honor.  Todd Hinnen

14   here on behalf of Google.

15         **THE COURT:**  Good morning.

16       This matter is on for the Government's motion for an

17   evidentiary hearing to determine an appropriate sanction for

18   the position Google has taken in terms of compliance on the

19   search warrant which was the subject of a prior order of the

20   Court.

21       And then also we have the request by Google to --

22   agreement to be held civil contempt with a stay to afford

23   appellate review and then a proposal that that be at a $10,000

24   per day figure and then a preservation order as well.  I guess

25   that motion was filed in September, after my order of

1  August 14, 2017.

2      So that's -- those are the issues I think we're talking

3  about today, correct?

4          **MR. HINNEN:**  Correct, your Honor.

5          **MR. PAK:**  Correct.

6          **THE COURT:**  So why don't I go ahead and let the

7  Government -- well, you're both in a sense moving parties, but

8  let me have you, Mr. Pak, start the discussion.

9          **MR. PAK:**  Thank you, your Honor.

10      And as your Honor already noted, both Google and the

11  Government agree on at least one thing, and that's that Google

12  should be held in contempt and sanctioned by this Court.  The

13  question before this Court at this stage of the proceedings is

14  what that sanction should be.

15      Now, Google's proposal of a daily fine of $10,000 a day,

16  essentially Google assures the Court that despite its brazen

17  violation of Court orders in the form of SCA warrants, both

18  here and across the country, that $10,000 a day is sufficient

19  to compel a $600 billion corporation to comply even if it later

20  determines that it's ultimately in its own business interests

21  to continue to defy the authority of this Court.

22          **THE COURT:**  What exactly are you -- are you thinking

23  this sanction award or sanction amount, I should say, is going

24  to police Google to do?

25      I guess I'm not clear on what you think they are going to

1   do absent some to be determined significant sanction.  What is

2   it you think they are going to do?

3          **MR. PAK:**  Not comply with this Court's order, the

4   August 14th order.

5          **THE COURT:**  Ultimately they are going to be told one

6   way or the other by forces higher than this Court whether or

7   not my order was right or wrong.

8          **MR. PAK:**  That's right, your Honor.

9          **THE COURT:**  At that moment in time -- what we're

10  talking about now is some sort of interim order that's going to

11  compel them to -- to act in a certain way.  What is -- if I go

12  your way, we have an evidentiary hearing.  We determine a

13  significant sanction.

14      How will the dynamic change from the situation were I do

15  adopt Google's approach, which is the $10,000 per day stayed

16  amount with a preservation order?  How is the world going to be

17  different if I go your route?

18          **MR. PAK:**  Your Honor I think the world will be

19  different because having a company comply with a Court order is

20  something that's generally to be expected.

21      In this case what Google did at the very outset of this,

22  before litigation even started, was not comply with Court

23  orders both here and around the country.

24      So our point is essentially that we need to determine an

25  appropriate monetary sanction that takes into consideration

1    that Google is a profit-driven company and that its behavior is

2    going to be altered by something that actually impacts its

3    bottom line.

4              **THE COURT:**  I guess I'm -- that's what I'm trying to

5    focus on.  Absent this -- if there is only a $10,000 per day

6    stayed amount, what is the -- what is -- is your concern is

7    going to happen?  That evidence will be destroyed or materials

8    will be secreted?

9         What is going to happen, in the Government's view, that

10   requires the additional assessment of a more significant

11   sanction?

12             **MR. PAK:**  So two things.  So first we believe that

13   there is at least a three-month period of time, which I am

14   happy to walk through the timeline, where information

15   responsive to the warrants at issue here were not preserved by

16   Google.  And I could walk through the nuances to where that

17   arises in the timeline.  That's number one.

18        But to answer more directly your question, our concern is

19   if you had asked prior to all of this whether we thought that

20   Google would simply decline to listen to you or abide by Court

21   orders in the form of SCA warrants, I think the answer would be

22   no, of course not.  They would comply with Court orders.  But

23   they haven't.

24        So our concern is whatever the environment may be at the

25   time that an appeal is taken and resolved, and assuming an

1    affirmation, that it may be ultimately in Google's business

2    interests to continue to defy that order.

3         And we don't want to waste time any more, your Honor.

4    It's been 15-and-a-half months since the warrant was issued.

5    So any delay in that regard would be problematic.

6         So even if Google's position is that they want a stay with

7    respect to whatever sanction that ultimately is, the sanction

8    itself needs to have significance teeth in order to compel

9    Google, a $600 billion corporation, to actually change its

10   behavior.

11             **THE COURT:**  Compel them in a sense to require, in

12   your view, compliance prior to getting some appellate review of

13   this?

14             **MR. PAK:**  Or after, your Honor.  Quite frankly, in

15   the ideal situation we would have compulsion right away because

16   we need the documents now.

17        But irrespective of that, the --

18             **THE COURT:**  I guess that's my question.  Assuming for

19   a moment that that is not going to happen, immediate

20   compliance, then the question is -- the question is the

21   preservation of this evidence, which will be the turning over

22   of that, to be determined by decisions at the appellate level

23   or perhaps by the Supreme Court in the *Microsoft* decision.

24        Do you really have concern that they are going -- in the

25   interim that they are going to destroy the documents or move

1   the documents or if -- we all are operating on the likely

2   scenario that these documents are not going to be produced to

3   the Government until we have some guidance from the Appellate

4   Courts.  Do we really have some concern here?

5            MR. PAK:  Absolutely, your Honor.  And it's not a

6   concern that they are going to go ahead and destroy what

7   evidence is currently preserved, which is not everything

8   frankly, first of all.

9        But secondly, even if the issue is that they decide to

10  continue to defy the August 14th order and continue to preserve

11  that information, we're at 15-and-a-half months now.  Where

12  will we be at that time?  And justice delayed is a big problem.

13  It's justice not served.

14       And because we're dealing with a real criminal case where

15  there are discovery obligations, where there are

16  investigational arms potentially that may be ongoing, that

17  further delay is too much.

18       I mean, in fact, the fact that there is ongoing to be a

19  stay, I think personally, is problematic.  I understand under

20  the case law that typically a stay is implemented in this type

21  of situation.  But at least let's develop the facts so that we

22  can determine that at the end of all of this, regardless of

23  what the environment is, the political socioeconomic

24  environment, regardless of what Google thinks it needs to do to

25  increase profitability, to increase marketing with certain

demographics, that they are going to comply immediately.  And

that's a problem.

    I mean, if we're dealing with a company that has a history

of complying immediately without making the Government go

beyond what it's obligated to do under the statute, under case

law, that would be one thing.  But we're dealing with a company

that actually has taken the position that, hey, because we've

decided that the Second Circuit decision is going to apply

nationwide, a decision that really only the Supreme Court is

going to make, we're going to go ahead and not comply with this

order.

    And you know what?  It's not even just this notion of

Google trying to seek guidance from the Court, because it

didn't do so in cases around the country.  When it did so here,

it was December 6th, well after and only because it learned

that the Government was about to move to compel, months after

it told the Government unilaterally what its decision was.  And

it didn't even preserve -- or there's certainly evidence to

show that it didn't even preserve information during that time

period.

    Now, if the company were to challenge, for example, a

search warrant and even if they took the position of we're

going to hold on to this data until we go to court and

challenge it, they would certainly preserve that data.  Google

hasn't been doing that nationwide until about November of 2016.

1    And in this case between July 2nd, 2016 and October 12th, 2016

2    we have no indication that they have.

3          In fact, your Honor, I invite you to look at the orders

4    that Google has put in their -- in their contempt motion.  They

5    sort of treat Judge Howell's order out of D.C. and the *Glass*

6    *Door* order out of Arizona as the holy grail.  Now, they took

7    all of the language from that proposed order, except for the

8    language regarding preservation, and they changed that

9    language.  The language in those other orders said that Google

10   is required to preserve all information responsive to the legal

11   process, period.  Okay?  And I know that Google had the Word

12   version of these orders.

13         The order that's proposed to you, your Honor, is

14   different.  It says -- and I forget the exact language -- at

15   the current time or currently in its possession.

16         Now, there is a reason for that change, your Honor, and

17   the reason is because we don't even know that everything that

18   they were supposed to preserve was, in fact, preserved.  And

19   that is a huge problem.  And that speaks directly to --

20         **THE COURT:**  How would that be rectified by this

21   significant sanction order that you're contemplating?  I mean,

22   that's sort of a concern that already historically there has

23   been some problem.  I don't know how a more hefty, robust

24   sanctions order is going to really address that concern.

25         **MR. PAK:**  If the data is lost, the data is lost and

```
 1    it doesn't rectify that.

 2         But it does speak to the company that we're dealing with

 3    and what their motivation is, your Honor.  It does speak to the

 4    notion that you can't just say:  Well, Google of course is

 5    going to comply with the order once it becomes effective

 6    because it's a Court order.  No.  That's not the case.

 7         They have -- they have declined to do that in this case

 8    and in others to the detriment of those cases resulting in the

 9    loss of data irretrievably.  Both here and, as you know, I

10    think they're referring to the case from 2014 where Google did

11    the same thing in a murder case where data was lost.

12         So it's not as though it would necessarily rectify the

13    problem, but certainly addresses the issue of why should I just

14    take Google at its word that it's ultimately going to produce

15    this information?  Historically you can't.  And the reason you

16    can't is not only because there is a pattern of conduct here

17    where they are willfully violating Court orders, but because

18    it's a profit-driven company.

19         And so understanding that it's a profit-driven company --

20    and this is not an indictment against Google or capitalism.

21    Understanding -- understanding that they are profit driven,

22    it's important, both under the case law and rationally, your

23    Honor, that we would have to look at things, like what was the

24    profit motivation, if any, of spending all the money that they

25    did in their so-called retooling efforts simply to not comply
```

1   with the warrants and to not preserve data during that time.

2   What drove that decision?  Was it because, you know -- or what

3   drove Google's decision --

4           **THE COURT:**  You're getting to what was -- was going

5   to be one of my questions to you, I think you are, which is

6   what exactly this evidentiary hearing would look like?  What is

7   it that -- what would we be doing if we had an evidentiary

8   hearing?  Walk through with me what the Government would plan

9   to present or, you know, the type of witnesses that would be

10  called and what it is that we would be assessing.

11          **MR. PAK:**  Yes, your Honor.  In our opening brief on

12  this issue we set out eight questions.

13          But before I go over what they are, I think the -- the

14  crux of the questions are as follows.

15          First, how much did Google spend?  How much was it worth

16  to Google to spend on this retooling effort which was used

17  simply to defy valid Court orders?  Right?  Understanding how

18  much they were willing to spend in an effort to usurp the role

19  of a magistrate judge and to -- to simply not comply fully with

20  Court orders is key to understanding what amount of value they

21  attributed to that and understanding whether -- and that's,

22  obviously, going to go to the question of how much sanction,

23  monetary sanction is going to be enough to actually compel them

24  to change their behavior and treat these orders as the rule of

25  law, which they haven't been.

1    The other question is, what were the overarching goals?

2    Was it because, for example, Google wanted to do better in

3    European markets or some other markets that may be useful to

4    them?  What was the value of that?  Understanding that is also

5    going to be important because if we have an affirmation -- not

6    to get ahead of ourselves, but if we have an affirmation in the

7    Ninth Circuit, those factors may still exist.

8         **THE COURT:**  So what would -- play that out for a

9    moment with me.  I get testimony on those issues.  What am I

10   supposed to do with that?

11        I mean, in your mind that means that if the motivation of

12   Google is determined to be in a particular vein, that then

13   equates to potentially a higher daily amount?  Is that where

14   you're going with this?

15        **MR. PAK:**  Yeah.

16        **THE COURT:**  Okay.

17        **MR. PAK:**  That's exactly right, your Honor.  Because

18   it really -- it really -- it would be one thing, again, if we

19   were dealing with a person or an entity where we can say they

20   are going to comply with the Court order once it kicks in,

21   right?  Even if there is a stay, they are going to comply with

22   the Court order.  But we don't have that history of conduct

23   here.  We absolutely do not have that history of conduct.

24        And even to the extent --

25        **THE COURT:**  So your position, the Government's

```
 1   position, really, is that the record is sufficient to infer
 2   that absent a presumably more significant daily liquidated
 3   amount than what Google is proposing that Google is going to do
 4   something to the evidence that's -- that's already been
 5   accumulated?  I mean, I'm really --
 6           MR. PAK:  Honestly, your Honor --
 7           THE COURT:  That's significant --
 8           MR. PAK:  I wouldn't go as far as saying that we
 9   would think that Google would do something to destroy the
10   evidence.  Okay?  That's certainly not what we believe is
11   happening here.
12       What we do believe --
13           THE COURT:  I mean, the backdrop against all this is
14   this is an issue that's playing itself out of consequence about
15   the obligations of, you know, in this particular case, this
16   particular company.
17       But you're not suggesting that the company has some --
18   some invested interest in how particular cases are coming out.
19   In other words, they are not -- they have an issue to litigate
20   a principal about access to information, but they don't have
21   any particular interest in evidence not being disclosed, do
22   they?
23           MR. PAK:  No.  Like I said, I don't think the
24   question is whether Google will intentionally destroy the
25   evidence.
```

1       I think the question is whether Google will find it

2   beneficial in some way, outweighing the $10,000 daily fine, to

3   continue to violate the Court's order.

4       Now, it doesn't mean that they have to go in and destroy

5   whatever partial information they've preserved, but it does --

6          **THE COURT:**  Isn't this -- and maybe you can tell me

7   why I'm wrong.  Isn't -- Google is in a position where it -- it

8   wants some final determination on what its obligations are and

9   how it should act on those obligations when it can gets

10  processed from the Government.

11      Is there -- is it your suggestion that they -- that there

12  is some preference, if you will, as to how they want that to

13  come out?  I mean, or do they just want an answer?

14          **MR. PAK:**  I think that they are -- I think the

15  preference isn't so much, quite frankly, how it comes out.  But

16  quite --

17          **THE COURT:**  Yeah.

18          **MR. PAK:**  To be uninhibited, your Honor, I think the

19  preference is to show the public that they are taking certain

20  actions which, you know in many cases is a good thing, right?

21  If they are moving to quash warrants because --

22          **THE COURT:**  That's exactly right.  Is it

23  necessarily -- let's assume that there is a public relations

24  aspect to what they are doing here, but is there something

25  nefarious to that?

1          I mean, they are taking the public posture that they are

2     protecting privacy rights of their users and it may well be

3     that the Appellate Courts going up to the highest court say no,

4     that's not consistent with the -- with United States law.  And

5     then they -- and then they say, okay.  I've got an answer to

6     this.  We fought the fight and now we've got to respond.

7          Isn't that what's kind of going on here?

8               MR. PAK:  No.  I think it's different than that.  And

9     it's not -- the Government isn't seeking punishment for their

10     prior conduct, at least not in this motion.

11          But think about it this way.  If the public relations

12     motivation had driven Google to not move to compel and not move

13     to quash and to just decline to follow Court orders, then

14     there's going to be a public relations benefit potentially at

15     the end of an affirmation in the Ninth Circuit, assuming that

16     that happens, and that needs to be accounted for in the

17     sanction.

18               THE COURT:  Well, okay.  Two -- two final questions.

19     I mean -- or maybe three, and then I'll hear from Mr. Hinnen.

20          You know, I thought when I looked through your papers that

21     the concern was not so much a specific concern that in this

22     context the requested materials that Google was going to

23     ultimately provide them if they were called to do so, but more

24     of a concern, from the Government's perspective, about how a

25     large corporation, for example, shouldn't be given the

```
 1   opportunity to not respond in a circumstance where others would

 2   be compelled to respond.

 3        In other words, there aren't two different rules, one for

 4   large entities that can say:  Well, you know, we're not going

 5   to respond to this.  We're going to have this litigated higher

 6   up and in the meantime we're going to do what we want to.

 7        And I thought the Government was saying, no, there aren't

 8   two sets of rules; one for -- one for the grand companies and

 9   one for the smaller players.

10        Am I reading that right?

11            MR. PAK:  No, you are reading that correctly, your

12   Honor.

13        I think that a big problem with this whole situation isn't

14   so much that Google wants judicial guidance, to the extent that

15   that's the case, on what the scope of these warrants can

16   legally be.

17        I think the problem is going around the rule of law and

18   trying to apply a different -- or applying a different set of

19   rules to themselves that basically inserts them somewhere above

20   a magistrate judge, even a district court judge signing an SCA

21   warrant or higher.  And that absolutely is a problem.

22        Now, is that necessarily the basis for fact-finding as to

23   their motivations and what would compel them to change their

24   behavior?  Not necessarily.  Right?  We have a different basis

25   for that factual hearing as well.  But it is a problem.
```

1          And, in fact, the *Richmark* case, your Honor, does

2     indicate -- and this may arguably be a CF or dicta, but the

3     *Richmark* case does indicate that when you're dealing with a

4     company, that it is appropriate to consider not only its

5     conduct in response to the order at issue, but its future

6     conduct.  And we think that's important, too.

7          Now, if that were our only reasoning, would we need a

8     factual hearing?  Probably not.  I think we would just need a

9     sufficiently serious sanction.  One that was so large, I think,

10    that there would be no question that it would deter this sort

11    of behavior in the future.

12         **THE COURT:**  Okay.  My second question, and perhaps

13    last question at this point is, you know, it's not lost on me

14    that there have been, as you point out, a couple of other

15    district courts that have gone down a path, Judge Howell in

16    D.C. and Arizona.  I think it's Arizona.

17         You know, why is it the position of the Government in this

18    case different than the -- and I'm not suggesting you're bound

19    in any way by the United States Attorney's Office in the

20    District of Columbia or wherever else.  You're got your own --

21    this is a different case.  The Northern District can take

22    whatever position it wants to take.

23         But why -- why shouldn't I give a lot of thought to what

24    those other courts have done in light of the fact the

25    Department of Justice took the position it took in those cases?

1          **MR. PAK:**  Well, the *Glass Door* case is different.

2    That's --

3          **THE COURT:**  That's Arizona?

4          **MR. PAK:**  That's the Arizona case.  That wasn't on

5    the foreign stored data issue.  But I can speak to the D.C.

6    case and this case.

7          And, you know, I understand that you already have

8    considered or have internalized a notion that one stipulation

9    doesn't necessarily impact the other.  But there is also a

10   difference in the cases.  There is a difference in equities.

11   There is a difference in the amount of data at issue.

12         This is a warrant that involves a large amount of data, a

13   very large amount of which has not been produced at all.  And

14   those kinds of factors warrant a distinction here because the

15   Government's goal here, as I said, is, within the law, as

16   quickly as we can possibly get these documents, we want to get

17   them.

18         Now, even though Google sort of views the sanction order

19   and the contempt order as its ticket to the Ninth Circuit, sort

20   of something that's necessary for their appeal, there is a lot

21   of reasons why that doesn't actually make sense here, your

22   Honor.

23         Now, first off, in the *Richmark* case the Ninth Circuit has

24   held that the sometimes arguably harsh dilemma of having to

25   choose between compliance with the Court order and perfecting

1   an appeal is not something that's considered in fashioning an

2   appropriate sanction.  All right?  So under the law that's not

3   relevant.  That's number one.

4        Number two.  Google is already appealing the D.C. opinion.

5   Now, the district court in D.C. was the first of the three

6   district courts to offer a ruling or issue a ruling on this

7   matter.  So they noticed an appeal on that.  There -- you've

8   obviously seen the order by Judge Howell and so they are

9   getting the bite at the proverbial apple.  So here, for them to

10  say that all we want is to generate appellate law, is somewhat

11  undermined by that.

12       Thirdly, last week the Supreme Court granted *certiorari* in

13  the case, in the Second Circuit case that's essentially all

14  about.  So at least the core issue that you've decided in the

15  August 14th order is going to be decided by the highest court

16  in the land.  Again, undermining this notion that the Court

17  should sort of provide some sort of nominal sanction or

18  something that Google just says is appropriate as a basis for

19  an appeal.

20       Fourth.  The D.C. appeal, Supreme Court ruling aside, it's

21  really unrealistic to think that the core issue addressed here

22  on foreign stored data is not going to be pressed by multiple

23  defendants in the Ninth Circuit.  And so to the extent that we

24  don't have an appellate ruling from somewhere, it's likely to

25  happen.  Now, maybe Google is not going to be a party or make

1   an argument in that matter, but that's something that is going

2   to be pressed by criminal defendants.

3        Fifth.  Even taking Google's notion that, Judge, you know,

4   we just want an appeal there and that's all we're asking for.

5   That really doesn't address, and Google has not offered, any

6   factual basis for saying that $10,000 a day is enough.

7        Now, I understand perhaps the knee-jerk reaction is, of

8   course, they are going to  comply.  It's a valid Court order.

9   But as we said in our briefs, and I'm saying now, that logic

10  didn't apply at the outset of this with respect to this warrant

11  and every warrant across the country since prior to the

12  *Microsoft* decision going back to July 2nd, 2016 when this

13  warrant was received by Google.

14       Finally, your Honor, taking Google at its word as to what

15  is an appropriate sanction that's going to compel it to

16  ultimately comply after resolution at the Ninth Circuit level,

17  it doesn't account for the fact that we are dealing with a real

18  case, a real crime, real victims, and that we haven't had our

19  documents for 15-and-a-half months now.

20       Now, I don't expect Google to be able to internalize those

21  issues.  It's a corporation.  It's a parent company.  It has

22  shareholders to answer to.  And that's fine.  But, of course,

23  your Honor, this Court can and should take those considerations

24  into account.  And that's certainly not something that can be

25  accounted for by simply saying:  Well, Google needs to appeal

```
 1    to the Ninth Circuit.  Even though, as I said before, appellate
 2    law will certainly be generated.  If not, law from the Supreme
 3    Court that's going to cover the core issue that they are trying
 4    to address.
 5         One thing I failed to mention before, your Honor, when we
 6    were talking about contempt and the notion that, you know, do
 7    we actually think Google is going to destroy documents or
 8    perhaps even lose documents.  Right?  Because if there is a
 9    delay, and this isn't out of the question, and we don't have
10    the documents, those documents, that information can still be
11    lost in some way.  It does happen.
12         At least if we have it, if the Government has it, it's on
13    us.  And if it's negligent or reckless or even intentional,
14    that would still result in a contempt hearing and it would
15    still require fact finding.  Right?  And then that's ultimately
16    what we are asking for here.
17         And, your Honor, if -- if I may, I'd like to just walk
18    through the timeline, just --
19              THE COURT:  Well, I think I might give Mr. Hinnen a
20    chance and then you can come back to that.
21         So, thank you.
22              MR. PAK:  Thank you.
23              THE COURT:  Mr. Hinnen.
24              MR. HINNEN:  Thank you, your Honor.
25         There is a lot to respond there.  Let me begin with the
```

1    fact that the only reason Google is here and the Government

2    gleefully says:   We agree Google shall be held in contempt.

3         As the Courts recognize, the only reason Google thinks it

4    should be held in contempt is because that's the only way it

5    can assure its right to take this matter up to the Ninth

6    Circuit and receive clarity from an appellate court in the

7    appellate jurisdiction that is home to more than 50 percent

8    probably of the country's providers.   The appellate

9    jurisdiction that's probably the most significant jurisdiction

10   in the country to address this issue.

11        It does that not against a blank slate, like Microsoft did

12   in the Second Circuit, but against a slate in which the only

13   other appellate court to have addressed this issue in the

14   country decided contrary to what this Court decided.

15        And so I know the Court is aware of that and has --

16        **THE COURT:**   Let me ask you, you know, I think in some

17   ways the biggest concern I have is this notion that a private

18   entity can pick and choose when it's going to respond to an

19   order that says it must comply with, in this instance, a

20   warrant.

21        I mean, why should you be allowed to say that because

22   there is some litigation in the Second Circuit, and I won't go

23   over all of the aspects of the -- you know, the fact that

24   it's -- it's not some definitive statement and now the Supreme

25   Court is going to take a look at it in any event.

1    Why should you be allowed to say:  Well, we're just not

2    going to respond.  We want to get some more from different

3    appellate courts around the country.  And the Ninth Circuit is

4    an important circuit from your perspective, and indeed it is.

5    But, you know, why should you be allowed to do this?

6        **MR. HINNEN:**  That's not what we did, your Honor.  If

7    we had an evidentiary hearing, Google would call John Lynch,

8    the Chief of the Computer Crime Section who Google spoke to the

9    day the Second Circuit case came down.  It would call John

10   Lynch and Patty Stemler, the head of the Appellate Division,

11   that it had two phone calls with to discuss the implications of

12   this case and to try and sort out how Google was going to

13   comply this troublesome legal precedent to -- to this case.

14       And, you know, it's difficult for Google to have

15   conversations with 94 different U.S. Attorney's Offices.  And

16   the role of the Computer Crime Section is to coordinate

17   nationally on these issues.  So we discussed it with the

18   Department of Justice rather than try and discuss it with all

19   of the different U.S. Attorney's Offices.

20       The first communication that I'm aware of -- you know, the

21   Government makes it sound like Google ran off and hid somewhere

22   and the Government was trying to find them to discuss this

23   issue with them.  The first communication that I'm aware of

24   from the Government on this issue is an email of September 27th

25   from Special Agent Delaney in which he says, and I quote:

1          "I realize we requested a large volume of
2      information from Google and that it would take time to
3      gather and produce records.  I am wondering if there
4      is an indication of either when the records will be
5      available or if we can arrange of [sic] a partial or
6      rolling production."
7      This isn't:  What on earth is going on?  Where are our
8  records?  This is an understanding that when you submit a
9  warrant for multiple different services, for 22 different
10 accounts, that it takes time to process that warrant.  And that
11 it -- in September 27th it was well within the Government's
12 expectations that that was the time period that it would take
13 Google to process that warrant.
14     So it's not a matter of Google thumbing its nose at a
15 Court.  It's not a matter of Google trying to disobey
16 something.  The warrant doesn't say:  Produce data stored
17 inside the United States and outside the United States.
18          THE COURT:  No.  But, I mean, let's talk about the
19 here and now.
20          MR. HINNEN:  Sure.
21          THE COURT:  In this case you have an order from me
22 that was issued in August that I don't think left anything
23 unclear; that it was my view in terms of the review of Judge
24 Beeler's decision, and my affirming that decision, that you
25 need to respond to the warrant.

1        You're taking the position that there is something about

2   either the nature of this case in terms of the legal issues and

3   the complication of it and the difficulty with the statutory

4   scenario we have, or something about the players here that --

5   that I should deem you to be somehow exempted out of, if you

6   will, the usual process.

7        The usual process is comply with the order of a United

8   States district court.  That's pretty straightforward.  And

9   you're saying in this case you shouldn't -- you should do

10  something different.  Your Honor, we know you issued the order.

11  But you should take a different path.  And you should take the

12  path that was mapped out in the District of Columbia and all of

13  that.

14       But why?  Why?  Is there something unique about this

15  particular dispute that should cause me to overlook the fact

16  that you are in a sense, and more than in a sense, refusing to

17  comply with the order of this Court?

18       **MR. HINNEN:**  Yes, your Honor.  I think there are two

19  things.

20       First, I think the ordinary course, when a district court

21  issues the order, is the party has an opportunity to appeal.

22  That's the ordinary course.  The ordinary course is:  Thank

23  you.  We would like to mover for that to be stayed.  We intend

24  to exercise our right to appeal.

25       In this particular context --

1          **THE COURT:**  Well, I don't know if that's the ordinary

2     course when you're talking about a search warrant and you move

3     to quash and you lose.  It is not the expectation that we

4     simply wait for the entire appellate process to play itself out

5     before you to comply.  That's not the usual process.

6          **MR. HINNEN:**  But the process in this case puts a

7     provider in a Catch 22, where if they -- and your Honor put

8     your finger on the circularity of the Government's argument

9     here.

10         If Google is compelled to comply, we don't get certainty.

11    And I appreciate the Government's suggestion that maybe some

12    time down the road a criminal defendant might raise this issue

13    in a supression hearing and Google, which gets tens of

14    thousands of pieces of legal process a year, might get its

15    clarity in 18 months, and the rest of the providers around the

16    country may have to wait for that as well.

17         But the only option Google has -- I can tell you that if

18    it weren't necessary to perfect its right to appeal and it

19    weren't a question of whether this might violate the law as

20    announced by the Second Circuit, which the Supreme Court has

21    now indicated it is an important enough issue for it to take a

22    look at, we wouldn't be here.  Google would have produced long

23    ago.

24         As I said, they receive tens of thousands of legal process

25    a year and they comply with the vast, vast majority of them,

1   unless there is a significant legal question about the

2   lawfulness of the warrant or the order.

3          **THE COURT:**  Let me ask you the -- Mr. Pak points out

4   that the preservation language from Judge Howell's case is

5   different than what you propose in this case.

6          **MR. HINNEN:**  I invite the Court to order Google to --

7   Google is preserving all data that it has.  I invite the Court

8   to change that language and order Google to continue to

9   preserve the data during the pendency of the appeal.

10         **THE COURT:**  But why was it changed at all?   I mean,

11  just -- I have to go back and look --

12         **MR. HINNEN:**  Your Honor, it may be because the

13  Government engaged in conversations with Google in those other

14  districts and ended up stipulating to a form of proposed order.

15  Whereas, here the Government said:  No, I'm sorry.

16      And it was Mr. Pak and his office were involved in both of

17  those negotiations.  And Google is the same company in

18  Washington D.C. that it is here.

19         **THE COURT:**  Well, I thought his point to me was that

20  what you were proposing to me was -- was language that was -- I

21  understand that whatever was negotiated in Washington was

22  negotiated in Washington.

23      But I'm trying to get at, is there -- is there

24  significance in the fact that the language, apparently, that

25  you're proposing now that I would enter for the -- if I went

1   your way and entered the contempt order with the $10,000 and

2   whatever preservation language you proposed, that it's

3   different.  And are you -- I hear you saying:  Well, if it's

4   different, then you can ignore that and go back to the

5   Washington language.

6            **MR. HINNEN:**  Google is preserving and will preserve

7   during the pendency of the appeal all data it has regarding

8   this case.  And if the Court wants to change that language to

9   say that in any way it wants, Google will comply with that.

10           **THE COURT:**  All right.

11           **MR. PAK:**  Your Honor, I'm sorry.  And I'll wait for

12   my turn to talk on all the issues, but Mr. Hinnen's response

13   keeps saying "all the data it has."  Right?  That does not

14   account for the data that was originally called for in the

15   warrant.

16           **MR. HINNEN:**  Your Honor, I can't promise to preserve

17   data we don't have.

18           **THE COURT:**  Well, I said that at the beginning.  I'm

19   not sure where this contempt thing -- if I go the Government's

20   route, it's not going to address this problem.  If there had

21   been -- if there has been destruction of evidence, there has

22   been destruction of evidence.  And a higher sanction order --

23   you know, more money will not rectify that problem.

24        So it's a bit of an apples and oranges issue.  I

25   understand you're concerned that there is material that now can

never be retrieved and perhaps we have to address that in some

fashion.  But I don't see how this evidentiary hearing you want

me to hold is going to -- which, as I understand it, is focused

on the amount of the liquidating sanction amount I should

impose, how that's going to -- it's not going to bring back to

life document materials that are gone.

MR. PAK:  And even if it doesn't bring back to life

and even if it shouldn't relate to the monetary amount

necessary to compel Google to comply with the August 14th

order, it would still potentially be a basis for a separate

order of contempt, your Honor.  And -- and quite frankly --

THE COURT:  Why -- I mean, some day -- hopefully, you

would never have to do this.  Some day you can institute that

process.  If it's designed to sanction for non-preservation,

why -- I mean, it's not going to advance your cause in terms of

getting material that you want to get.  So what good is it?

Why where we going to do that now?  At some point you need to

have a fuller record, perhaps, to do that.

But that's not what you've asked me to do.  As I sit here

now, you've asked me to have an evidentiary hearing to

determine a sanction amount for purposes of preservation, not

for punishing this particular litigant company for what may be

a failure to preserve.  That's a different question.

MR. PAK:  And that's fair, your Honor, and I don't

deny that that may be something that should be explored in a

1   different type of hearing.

2       Although the question of whether or not they even

3   preserved data during the time period does relate to the

4   question of whether they are truthful now in stating that the

5   only thing they wanted to do is generate law.

6           **THE COURT:**  I understand that you're saying that the

7   relationship you're trying to draw is -- when I'm assessing how

8   much we can rely on their moving forward, preservation and the

9   like, I can take -- I could take that into account if you could

10  determine that there was a failure to do that.  I understand

11  that that's your argument.

12          **MR. PAK:**  Right.

13          **MR. HINNEN:**  And, your Honor, I have a practical

14  solution to that problem.

15          **THE COURT:**  Go ahead.

16          **MR. HINNEN:**  Google has represented in its pleadings,

17  and I'm prepared to represent to you as an Officer of the Court

18  here today, that when this matter is resolved on appeal, if the

19  result is a -- as a practical matter, an affirmance of the

20  Court's order, Google will produce the data it has that's

21  responsive to the Court's order.

22          **THE COURT:**  But --

23          **MR. HINNEN:**  And if we don't --

24          **THE COURT:**  But to the extent the Government thinks

25  that in the interim material has -- that should have been

```
 1    subject to the production has been lost or destroyed or
 2    whatever, you realize we may have to explore that, if they have
 3    enough of a basis to demonstrate to me that it's -- prompts a
 4    hearing.
 5             MR. HINNEN:  Sure.  And I agree with the Court that
 6    it's irrelevant to the motion for civil contempt regarding
 7    what's necessary to compel Google to comply with the current
 8    order.
 9         If I can address some of the other -- some of the other
10    issues raised by Mr. Pak?
11             THE COURT:  Sure.
12             MR. HINNEN:  He mischaracterized the holding of
13    Richmark, which doesn't hold that a Court should not take into
14    account the balance or the horns of the dilemma a party can be
15    thrust upon in having to choose between contempt and appeal.
16         Richmark upholds a district court's exercise of discretion
17    in imposing on an abuse of discretion standard and in imposing
18    a sanction on a company, and it does so reluctantly.  Judge
19    Nelson says, you know, although it may seem unjust or unfair,
20    it's certainly not an abuse of discretion, to paraphrase.
21         So it's not the case that there is Ninth Circuit precedent
22    out there saying judges should just ignore the fact that this
23    can be a difficult issue for companies.
24         There is a strong public interest in resolving this
25    question.  Google doesn't -- as your Honor pointed out, Google
```

doesn't have a strong interest in whether it's resolved by the

Ninth Circuit or resolved by the Supreme Court or resolved by

Congress.  Google could love to see it resolved by Congress.

Google wants and needs it resolved.  They continue to get

pieces of legal process from all over the country.

        I'm sure your Honor can appreciate the irony of the

Government's suggestion that we just bring a test case in one

district and then apply that -- that holding to the rest of the

country.  And then they spend three pages yelling at us about

the fact that we applied the Second Circuit's decision to cases

in the rest of the country.

        The test case was brought.  The test case was decided.

The Second Circuit decided that companies don't -- can't be

compelled with an SCA warrant to produce data that's stored

outside the United States.

        **THE COURT:**  I agree with your point, with the caveat

that I think the -- that this case is -- this warrant is

stronger for the Government than the one in the *Microsoft* case.

I think the Supreme Court could actually affirm the Second

Circuit and the Government would still have an argument here.

Because in *Microsoft*, not to go back into the merits, it was a

fairly clear showing that the material was housed on servers in

Ireland.

        In this case you can't tell me where this material is.

It's pursuant to the algorithm of where -- where this material

1    moves.  We don't even know where it is.

2         So, frankly, I think the Government's case is stronger

3    here than it is in *Microsoft*.  So we might not even get entire

4    clarity from a Supreme Court decision in that case.

5              MR. HINNEN:  Right.  So we can tell you that it's not

6    on servers in the United States.

7         And I agree with your Honor, that it's a theoretical

8    possibility that the Supreme Court could resolve this -- the

9    *Microsoft* case in a manner that left -- potentially left this

10   case open.

11             THE COURT:  Right.

12             MR. HINNEN:  Certainly, we hope that that's not the

13   case because, as your Honor has pointed out, what we're looking

14   for here is resolution and legal clarity.

15        I just have to point out that the Government stands all of

16   Google's efforts to try to comply with the Second Circuit

17   decision and try to comply with the prevailing law as it had

18   been articulated by the only Federal Court to articulate it at

19   that point in time, to try and take that effort and say:

20   Google spent all this money in order to not comply with -- in

21   order to thumb its nose at Court orders, it's just -- you know,

22   it's a mischaracterization of the facts, your Honor.  Google

23   spent a lot of money to try to comply with the only appellate

24   court decision interpreting the statute, to comply with the

25   law.

1        And Google has to do business and has to respond to

2   warrants in all of the district and circuits in the country.

3            **MR. HINNEN:**  Your Honor, I don't want to move past

4   the fact here that the Government is raising these same

5   arguments based on the same facts for the third time; that

6   these issues were before Judge Beeler.  And as I'm sure your

7   Honor can appreciate based on Mr. Pak's presentation today and

8   knowing Mr. Frentzen as do you, they were aggressively pressed

9   in that setting.  And Judge Beeler declined to hold Google in

10  contempt, declined to impose sanctions.  The Government did not

11  then say:  Well, that was an error and we're taking issue with

12  that part of her opinion.

13       The Government then renewed its motion.  Rather than say

14  there was an error in the Magistrate Judge's decision, it

15  renewed its motion before this Court.  This Court addressed

16  this in the August -- in the August 14th hearing and resolved

17  the matter as well.

18       And so we're here on the same issue for the third time --

19           **THE COURT:**  Well, we're in part here because you made

20  the --

21           **MR. HINNEN:**  That's correct, your Honor.

22           **THE COURT:**  -- affirmative request that to facilitate

23  your journey to the Ninth Circuit, that I enter an order.

24       You can't expect the Government then to say:  Well, we're

25  not going to say anything about that because you've already

 1   ruled before.

 2           **MR. HINNEN:**  What I can expect the Government to do

 3   is not renew the same arguments for the third time.  If the

 4   government wants to say:  Well, you know, this is a civil

 5   contempt matter where you look on a going-forward basis.

 6   What's the incentive necessary to require Google to comply?

 7           If we --

 8           **THE COURT:**  Although in fairness, the Government has

 9   to have an opportunity to respond to your proposal.

10           **MR. HINNEN:**  But, your Honor --

11           **THE COURT:**  So in responding to your proposal, you're

12   sort of trying to put constraints on them, that you can't say

13   anything that you -- that you said before.

14       I recognize in my order that I did say exactly what you

15   suggest I said about Google's good faith in trying to get a

16   resolution to this.  But I think it's a little much to say the

17   Government is now going to be hampered from making whatever

18   presentation it wants, in part, in response to your request.

19           **MR. HINNEN:**  I suppose --

20           **THE COURT:**  I mean, I'm not sure the process is

21   worth -- that aspect of is this a motion to reconsider or not

22   or what-have-you, I'm not sure that's all that productive.  I'm

23   going to address this question.

24           **MR. HINNEN:**  Sure.  I appreciate that, your Honor.

25       Just on the Government's reply on Page 2, I think it's

1  very clear that what the Government is doing here is not

2  focusing on a civil contempt order.  It's taking advantage of

3  the situation to focus on past conduct and try and punish

4  Google for past conduct.

5      If I can quote:

6          "Google's untimeliness in responding to the

7      warrant was raised by the Government throughout the

8      course of this litigation.  Yes.  And two Courts, two

9      judges so far have declined to enter that.  Perhaps

10     it's not Google that has a hard time complying with

11     the rulings of Courts."

12     And then it goes on to say:

13         "The purpose here is identifying an appropriate

14     sanction for that contempt."

15     They are trying to punish Google for conduct that occurred

16  in the past that they have already argued twice to two

17  different Courts.  And I understand your Honor is going to

18  address this anyways, so I will leave that argument for a

19  moment.

20     I guess the one other thing I would say --

21         **THE COURT:**  I do agree with you that the focus is --

22  at least in my mind is, you know, do I need an evidentiary

23  hearing to make sure that going forward materials will be

24  preserved and the like; that that -- we're not in the business

25  on this motion, and I think the Government acknowledged it to

1   me, of is there -- is a sanction somehow appropriate to punish

2   for past conduct by Google.  I agree that's not what's before

3   me.

4            **MR. HINNEN:**  So the one other thing I'd say, your

5   Honor, is there is a strong public interest in this issue being

6   resolved by an appellate court.

7        And as your Honor has pointed out, it's conceivable that

8   the Supreme Court's resolution of the matter will not resolve

9   the matter as to Google and companies that have similarly

10  constructed networks.

11           **THE COURT:**  Of course, that's the big problem in some

12  respects with the position, the overarching position you're

13  taking; the notion that we just need to get definitive

14  guidance, if you will.  And I know your ultimate argument is

15  Congress should deal with this, and I understand your position.

16       But it's not clear that there is going to be this

17  definitive judicial decision that's going to clear all this up.

18  And you're going to be constantly -- the Government, I think,

19  would have a justifiable concern that you're going to be

20  constantly saying:  Well, that doesn't answer the question

21  enough.  We need to continue to -- all these instances, stay,

22  stay, stay, stay, stay, because there are more -- there are

23  more questions to be answered.

24           **MR. HINNEN:**  Sure.  Sure.

25           **THE COURT:**  There are always going to be more

1    questions to be answered.

2          **MR. HINNEN:**  Sure.  And if I can address that

3    concern, your Honor.

4          I understand that it is a theoretical concern.  Google has

5    raised this matter in roughly a dozen districts in the country.

6    It has resolved the matters in all of the other districts in

7    the country with the exception of the District of Columbia and

8    this district.  Google is -- Google hopes for clarity.  That's

9    all I can say.

10         I agree that it's theoretically possible that Judge

11   Kraften ordered that it would leave open some issue and -- and

12   the Government and Google would have to struggle towards

13   clarity on that narrow issue, hopefully clarifying a good deal

14   of this and allowing Google to comply in the other cases.

15         **THE COURT:**  Okay.

16         Mr. Pak.

17         **MR. PAK:**  Sure.  There are quite a few things I would

18   like to respond to, your Honor.

19         First, Mr. Hinnen suggested that there was a negotiation

20   in D.C. and the implication is that Google reached out to folks

21   at the Computer Crimes Intellectual Property Section and OIA

22   and said:  Hey, we're going to not respond fully to search

23   warrants across the country.  Are you guys okay with that?

24   Sure, we are.

25         Nothing like that happened, your Honor.  And that's part

```
 1   of why we actually need a factual hearing on this sort of

 2   activity.

 3         MR. HINNEN:  That's correct, your Honor.  I will

 4   stipulate to that.  I didn't say "negotiation."  I said

 5   "discussion."

 6         MR. PAK:  And from what I gather, your Honor, you may

 7   be wondering:  Well, what would that sort of fact-finding have

 8   to do with the sanction going forward?  And quite frankly --

 9         THE COURT:  Good question.

10         MR. PAK:  Thank you, your Honor.

11      The answer to that is this.  Let's say you have a

12   non-party.  Pretend it's not Google.  Pretend it's an

13   individual, a mom and pop company, a hedge fund, whatever it

14   is.  And you have a history of conduct that suggests that they

15   view their own decision as to what they should do as above any

16   Court order or law.

17      Examining that and understanding how far that motivation

18   goes is, of course, going to be relevant to deciding what fine

19   or penalty is going to be sufficient to compel that person to

20   comply going forward.  And that's exactly where we have this

21   issue.

22      And although Mr. Hinnen has now said that, well, that's

23   not what he was saying, if you take a look at the introduction

24   to their reply brief on the sanctions issue, they mention these

25   discussions as though this was part of Google's efforts to
```

```
 1   generate guidance.

 2           THE COURT:  You know, at the end of the day, I

 3   understand that at this evidentiary hearing you will want to

 4   put on a presentation and showing of why, perhaps, a more

 5   significant amount than the amount of money we're talking about

 6   would be appropriate.

 7        But even under their proposal, they are going to have an

 8   order that -- of a Court that says they have to preserve this

 9   material.  If they don't do that, they are in significant

10   trouble.

11        And so, I mean, I don't understand -- I'm not sure why the

12   monetary question -- I could -- you know, a million dollars a

13   day, $5 million a day.  That's -- they are already under

14   significant constraint if they have a judicial order that says:

15   From this point onward you better preserve all this stuff.

16        And I'm not sure why what you want to do is going to

17   affect their conduct at the end of the day, unless what you're

18   really trying to do is punishing them for the past.  And that

19   is not what this hearing would be about.

20           MR. PAK:  Your Honor, I understand that.

21        Now, it is not the question of putting aside anything that

22   may have been lost in the past.  As of today, will that data be

23   preserved absent some of it being corrupted somehow, not

24   necessarily on purpose.  Right?

25        I don't -- the Government's position isn't that that is
```

1    the concern; that Google is going to go in and delete the order

2    after the Ninth Circuit affirmed.

3         The concern is that they won't comply with the order and

4    won't produce the documents to us.  And that is a valid --

5    validated concern because they had Court orders before that

6    required them.

7         Now, this is -- I mean, part of the thinking here is

8    manifested in Mr. Hinnen's argument.  He said:  Well, the first

9    time anyone from the Government reached out to us was

10   September 27th --

11             **THE COURT:**  Wait, wait, wait.  Let me go back on

12   this.

13        So if a more significant amount -- let's say, whatever

14   you -- I adopt whatever you propose after this evidentiary

15   hearing in terms of amount to impose, your position is that

16   will then facilitate their production in the event of an

17   affirmance by the Ninth Circuit?  Is that what you're saying?

18             **MR. PAK:**  Yes.  Yes, your Honor.

19             **THE COURT:**  Absent that, even when there is a Ninth

20   Circuit decision, you think they won't abide by it?

21             **MR. PAK:**  I think based on their prior conduct, we

22   have a valid basis for concern that, yes, when it was -- when

23   the environment was right, when it was beneficial to Google to

24   simply just say, okay, we're not going to comply with all of

25   these valid search warrant orders, they did so.

```
 1          I mean, if you think of yourself, before this case --
 2          THE COURT:  But this goes back to my point before.
 3     If they finally get a judicial determination from the Ninth
 4     Circuit, the U.S. Court of Appeals for the Ninth Circuit says
 5     you've got to comply, at a certain point what is -- even going
 6     into your concern about their motivation, they are -- do you
 7     suggest that they are aligned with the people who -- who your
 8     criminal investigation is about?
 9          I mean, they don't -- it's almost a suggestion that they
10     are just going to cling on to this material until the last dog
11     is dead.  And I don't see why you think they are going to do
12     that.
13          I can understand your frustration at the position they are
14     taking and you may well -- and you think that it may be driven
15     by PR motivations and the like.  But at a certain point in
16     time, I don't understand why you think they are going to be
17     constantly resistant to the orders of -- of Courts.
18          They haven't responded to this one, but they have -- their
19     argument is:  We want to take it up and get an appellate
20     determination.
21          I'm just not seeing where this evidentiary hearing to
22     assess some very significant sanction amount is going to, at
23     the end of the day, impact one way or the other how the fate of
24     this material you want to get, when it's going to be produced
25     to you.
```

1          **MR. PAK:**  Your Honor, so our position isn't that they

2     are aligned with the -- with the defendants in this case or in

3     this -- or the targets of this investigation.

4          But we've got an escalating problem with Google, and quite

5     frankly other providers, simply not complying with Court

6     orders.

7          **THE COURT:**  But their options are going to get more

8     and more limited.  If the Ninth Circuit does affirm the

9     decision that I made and if the Supreme Court reverses the

10    Second Circuit in the *Microsoft* case, these providers, Google

11    included, are going to have a much more limited opportunity to

12    resist.

13         **MR. PAK:**  But, Judge, frankly, if the Government came

14    to a magistrate judge or even a district court judge with an

15    application for a search warrant and said:  Judge, please tie

16    to that a $10,000 or $100,000 fine if the company doesn't

17    comply.  I think the response to that -- prior to all of this,

18    maybe five years ago, the response to that would be:  Why do

19    you think this company is not going to comply?  It's a valid

20    Court order.  We don't need to go that far.  And certainly

21    $100,000 is way too much.  Whatever the argument may be.

22         We -- we haven't gotten to that point yet, so we don't

23    know, quite frankly, how far this will go.  And it's not

24    because of this case or another case.  It's because of the

25    position that Google is taking.  Google has decided that it

```
 1   wants to take an appeal in the Ninth Circuit and in D.C., but
 2   not in the Eastern District of Pennsylvania, for example.
 3       So I don't know without further factor finding what the
 4   motivation is exactly and what it is that's going to prevent
 5   them from thinking this way in the future.
 6       So if the fine is $10,000 a day and Google perceives some
 7   benefit, perhaps with a certain demographic, of saying:  Well,
 8   we're going to take on -- we're going to be a martyr here for
 9   privacy.  Even though this isn't about privacy, as you well
10   know, your Honor.  But we're going to be a martyr here for
11   privacy.  The cost for is that is $10,000 or $100,000 if they
12   wait an extra 10 days.  And quite frankly, enough is enough,
13   your Honor.
14       And at that point to say that Google isn't capable of that
15   kind of conduct, I get it.  I totally get the initial reaction
16   to that, your Honor, but it is belied by the conduct leading up
17   to today.
18           THE COURT:  Okay.  All right.
19       The three month chronology, you want to go through with
20   me, I mean, I think I saw that the last time in one form or
21   another when I -- before I issued my order.  I'm not -- I don't
22   think I need that right now.  I get the gist of your concern,
23   that they were not forthcoming and that it was pulling teeth
24   for the Government all the way along.  I understand all that,
25   so I don't think I need you to go through it all.
```

```
 1        Is there some further thing?  And I'm going to --

 2             MR. PAK:  Yeah.  Yeah, your Honor.  If you could give

 3   me one second here.

 4             THE COURT:  Go ahead.

 5             MR. PAK:  So just a couple of other points without

 6   going through the timeline, your Honor.

 7        I want to talk about the -- Judge Beeler's order and your

 8   order.  And I know -- I'm not going to spend a lot of time on

 9   this because I feel like you've thought this through based on

10   the briefing.  But please take a look at Judge Beeler's initial

11   order, which is...

12        (Brief pause.)

13             MR. HINNEN:  I may be able to help here, your Honor.

14   We don't allege that Judge Beeler's order says:  I'm addressing

15   the broad contempt issue raised by the Government and I'm

16   finding that there -- I'm ruling against the Government on that

17   issue.

18             THE COURT:  I mean, the point you're trying to make

19   is whether or not I can consider this or is this -- are you

20   going to their argument that this is an improper motion to

21   reconsider?

22             MR. PAK:  Yes, your Honor.

23             THE COURT:  Because I've already said I don't think

24   it is.  So you don't have to worry about that.

25        I'm going to address this question on the merits.  I'm not
```

1  going to say procedurally you -- you can't bring it up because

2  it's a -- it's a motion to reconsider in sheep's clothing.

3            **MR. PAK:**  Understood, your Honor.

4        Now, there was a point made by Mr. Hinnen that the

5  Government had argued that it should take the approach of

6  pursuing a test case, as opposed to simply not complying with

7  search warrants.  And that's true, but our argument isn't that

8  Google should have proceeded with a single test case and

9  applied that holding across the country, but in any given

10 district to proceed with that test case and not simply flout

11 Court orders.

12       Now, the argument from Google may be:  Well, that's

13 expensive.  It's costly to actually go out and move to compel.

14 Well, first of all -- to move to quash warrants.  First of all,

15 that's really not going to be an issue for a company of

16 Google's size.

17       More importantly, it shouldn't be an issue, given that

18 they are willing to spend 4,500-plus man hours on their

19 retooling effort to simply follow the rule of law and move to

20 quash and amend search warrants that it believed were too broad

21 in scope.

22       So it's really no basis to say that the activity that they

23 undertook, simply not complying with the orders, was -- is in

24 any way justified.

25       As to the *Microsoft* holding, Mr. Hinnen made the point

1   that *Microsoft* -- the Supreme Court may not fully resolve the

2   issue because --

3            THE COURT:  I think I made that point.  I'm not sure

4   he did.  But, okay.

5            MR. PAK:  You're right, your Honor.  You made that

6   point and he acknowledged it.  And I think based on what you

7   had said about that, we're in agreement.

8        But to the extent that the Supreme Court's holding on

9   *Microsoft* is distinguishable from this case, it's

10  distinguishable in a way that actually helps the Government.

11  It doesn't help Google.

12           THE COURT:  I agree.  I agree.

13           MR. PAK:  So then the fact that the Supreme Court is

14  going to be deciding this will certainly resolve it with

15  respect to the core issue --

16           THE COURT:  Well, if they reverse the Second Circuit,

17  it will resolve it.

18           MR. PAK:  Right.

19           THE COURT:  Because I agree with you, that I think

20  that is a -- I think Google's case is weaker here than the

21  *Microsoft* case.

22       If they go the other way, that's where we're not sure

23  whether or not it will resolve the question, because you will

24  still have the argument that you've got a distinction that your

25  case -- that isn't present in the -- in the *Microsoft* case.

 1          But, I mean, those are reading tea leaves that we can't

 2     read now.  So let's leave that where it is.

 3          **MR. PAK:**  The final point, your Honor, is that

 4     Mr. Hinnen had indicated that Google -- its process throughout

 5     has been just to seek clarity and seek clarity in the appellate

 6     courts.

 7          And I've talked about why the fact that it's going up on

 8     appeal before the highest court and the D.C. Circuit sort of

 9     undermines that notion.  And the fact that they decided not to

10     seek an appeal in the Eastern District of Pennsylvania also

11     undermines this notion that all they want to do is get an

12     appellate decision on this.

13          But it has clarity.  It has clarity here from this court

14     in the August 14th order that clearly tells Google what it

15     needs to do to comply.

16          And again, your Honor --

17          **THE COURT:**  Well, you know, if this -- if this matter

18     gets decided by the Ninth Circuit and then -- you know, putting

19     aside cert requests to the Supreme Court, but it will be

20     decided.

21          I mean, they cannot take the position that, well, we're

22     not going to respond until we hear from the Fourth Circuit or

23     from the Eighth Circuit.

24          On this case if the Ninth Circuit decides they have got

25     to, I think -- I don't know what the argument would be at that

1    point.  So I'm not sure what the significance of the argument

2    you just made is.

3              **MR. PAK:**  Well, I think the significance here is that

4    it undermines sort of what Google's claimed motivation is here

5    as just trying to get an appellate decision.  Sure, it will

6    give them clarity here, but Mr. Hinnen's point was more that as

7    a general matter, they wanted to seek clarity in every single

8    court.  And that's why they didn't actually move before any

9    court, but simply declined to hold.

10        The last thing I wanted to talk about is the stay and the

11   stipulations that had been discussed between Google and the

12   United States.

13        Now, Google indicates that all it wants is the appeal

14   here.  And it absolutely needs the sanction that it's proposing

15   to your Honor in support of that.  And it sort of -- in its

16   opening brief on this issue it suggested that the Government

17   was simply trying to prevent Google from taking an appeal up to

18   the Ninth Circuit, which isn't the case.

19        I set forth in the factual -- in the facts of the

20   Government's response, Google and the Government had talked

21   about the August 14th order.  And, in fact, as of August 31st

22   of this year, about over two weeks after this order, Google had

23   informed the Government that it still had not decided whether

24   or not it wanted to comply with your Honor's order of

25   August 14th.  And so we pushed the issue with them because, as

1    I stated before, we're now 15-and-a-half months after the

2    issuance of the warrant, or after they received the warrant.

3        The reason for further delay between the parties was

4    because we were talking about various options.  And one of the

5    options that had been proposed by Google was how about if we

6    move Judge Seeborg to put a deadline on the August 14th order

7    and that Google violate that deadline by producing the

8    documents late and end up in the sanctions order, therefore,

9    you get the documents.  Counsel had taken that back to Google

10   and they had declined to do that.

11       So this notion that Google is only here because -- or

12   making this argument because it wants to secure an appeal

13   doesn't seem to be -- is inconsistent with that.  And to the

14   extent that the argument is, well, that would be sort of a

15   nominal sanction versus a real sanction, well, it's hard to

16   claim that what Google is putting in front of this Court as a

17   sanction that it wants for itself is any different in any

18   significant way.

19       So we do have a real concern about getting our documents

20   and getting them immediately, as soon as possible.  Whether

21   that's now, because they are sanctioned now and that compels

22   them to produce documents to us in a timely fashion prior to an

23   appeal, or whether it's because even if it's stayed, we get

24   those without any other fights in the courts or otherwise with

25   respect to whether Google is going to ultimately comply with

```
 1    that order.
 2              THE COURT:  Okay.  Last comments and then we'll call
 3    it a day.
 4              MR. HINNEN:  Yes, your Honor.  Just very briefly.
 5         That was my suggestion, that we explore that possibility,
 6    and now it's being -- we explore a possibility in which Google
 7    could perfect its right to appeal while at the same time
 8    producing the information.
 9         And we explored it.  We looked at Ninth Circuit precedent.
10    We saw if it had ever been done before.  Guess what?  It
11    hasn't.  And the only way to assure and solidify an appeal is
12    to take the contempt and to have the substantive reason for
13    doing so, that you haven't produced the documents.
14         And that's -- that's the problem with everything that's
15    going on here.  Google has acted in good faith and engaged the
16    Government to try and find solutions during an area of great
17    uncertainty in the law and the Government takes every effort
18    Google makes to try and find one of those solutions and says:
19    Ah-hah.  It's another indication that Google is in bad faith.
20    They suggested a possible solution and it didn't end up working
21    out.  It ended up being, you know, not consistent with circuit
22    case law.
23         That's all I have, your Honor.
24              THE COURT:  Okay.
25              MR. PAK:  Your Honor --
```

1          **THE COURT:**  I'm going to take the matter under

2    submission.   I will try to promptly give you an order and we'll

3    go from there.

4          **MR. PAK:**  Thank you, your Honor.

5          **MR. FRENTZEN:**  Thank you, your Honor.

6          **MR. HINNEN:**  Thank you, your Honor.

7       (Proceedings adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, December 22, 2017