DocuSign Envelope ID: 832DDB55-D46A-4825-A550-CEBE54106353

STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    lloyd.farnham@usdoj.gov

C. ALDEN PELKER (MD BAR)
Senior Counsel

    Department of Justice
    Computer Crime & Intellectual Property Section
    1301 New York Avenue NW, Suite 600
    Washington, D.C. 20005
    Telephone: (202) 514-1026
    catherine.pelker@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CONTENT STORED AT PREMISES CONTROLLED BY GOOGLE INC. AND AS FURTHER DESCRIBED IN ATTACHMENT A | CASE NO. 16-MC-80263-RS<br><br>**STIPULATION AND JOINT REQUEST TO CLOSE MATTER ADMINISTRATIVELY; ORDER** |

      This stipulation is entered into between the United States of America, acting through the United States Attorney's Office and the United States Department of Justice, Computer Crime & Intellectual Property Section (the "Government"), and Google LLC ("Google"), through their authorized representatives.

      WHEREAS, the parties have agreed to a resolution of all issues in and related to this case and the proceedings related to Google's compliance with the search warrant issued by the Honorable Laurel

STIPULATION AND ORDER 16-
MC-80263-RS
          1

Beeler, United States Magistrate Judge for the Northern District of California, on June 30, 2016, captioned "In the Matter of the Search of CONTENT RELATED TO BTC-E THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE INC. AND FURTHER DESCRIBED IN ATTACHMENT A," Case No. 3-16-70816;

WHEREAS, the resolution includes an Agreed Facts and Procedural History, attached hereto as Attachment A, and an Agreement between the parties, attached hereto as Attachment B. The Agreement involves continued and ongoing enhancements to Google's legal process compliance program, which is intended to achieve timely and complete responses to certain legal process in compliance with applicable laws, while permitting Google to safeguard users' privacy and limit Government access to user data except for responses to valid legal process and only to the extent authorized by law; and

WHEREAS, Google estimates that it has spent more than $90 million on additional resources, systems, and staffing to implement improvements to its legal process compliance program, including in response to these proceedings. In light of these significant expenditures, the parties agree that no further remedial compensation is warranted.

THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned parties, through their respective counsel, that this matter is fully resolved, and the parties jointly request that the Court close this case administratively.

DATED: October 24, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

LLOYD FARNHAM
Assistant United States Attorney


JOHN LYNCH
Chief, Computer Crime & Intellectual Property Section
U.S. Department of Justice

C. ALDEN PELKER
Senior Counsel

STIPULATION AND ORDER 16-MC-80263-RS         2

1  DATED: October 21, 2022                          WILMER CUTLER PICKERING
                                                    HALE AND DORR LLP
2

3                                                   _____
                                                    MARK D. FLANAGAN
4                                                   Attorneys for Google LLC

5

6

7                    **ORDER CLOSING MATTER ADMINISTRATIVELY**

8       Based on the above stipulation of the parties and considering the Agreed Facts and Procedural

9  History, attached hereto as Attachment A, and the Agreement of the parties, attached hereto as

10 Attachment B, the Court HEREBY ORDERS this matter closed, all issues having been resolved by the

11 parties.

12      This Court retains jurisdiction to resolve disputes regarding the resolution of this matter as set

13 forth in the Agreement of the parties.

14      IT IS SO ORDERED.

15

16 DATED: October 25, 2022

17                                                  _____
                                                    HONORABLE RICHARD SEEBORG
18                                                  Chief Judge, United States District Court

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 832DDB55-D46A-4825-A550-CFBE54106353

# ATTACHMENT A
# AGREED FACTS AND PROCEDURAL HISTORY

1. On June 30, 2016, the Honorable Laurel Beeler, U.S. Magistrate Judge for the Northern District of California, issued a search warrant pursuant to the Stored Communications Act ("SCA"), captioned "In the Matter of the Search of Content Related to BTC-e that is Stored at Premises Controlled by Google Inc. and further described in attachment A," Case No. 16-70816-MISC-LB, ("the Warrant") requiring Google to produce materials relevant to the investigation of an illegal cryptocurrency exchange called BTC-e and its administrators. On July 6, 2016, Homeland Security Investigations Special Agent Michael Delaney served the Warrant on Google.

2. On July 14, 2016, the Second Circuit Court of Appeals issued its opinion in *In the Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.*, 829 F. 3d 197 (2nd Cir. 2016) (the "Microsoft Decision"). That decision held that SCA search warrants did not reach data stored outside the United States.

3. Following the Microsoft Decision, Google temporarily halted processing of the Warrant. The Microsoft Decision was issued by the Second Circuit, in which Google operates but is not headquartered; however, in the absence of contrary Court of Appeals authority directly on point, Google conducted a legal analysis and decided to follow the Microsoft Decision in all Circuits, including the Ninth Circuit and the Northern District of California.

4. At the time of the Microsoft Decision, in order to optimize performance, reliability, and other efficiencies, Google stored certain data in an intelligent network, which moved component parts of data seamlessly and automatically between locations. As a result, Google could not always determine the country in which certain data was stored at a given time. Following the Microsoft Decision, Google determined that in response to United States search warrants, Google was required to produce only data that it could confirm was located in the United States. However, at the time, Google's legal export tools would collect information from across Google's servers without regard to location and save the data within the United States. Google believed that using its legal export tools to retrieve the data in connection with the Warrant would exceed the scope of the SCA's reach as interpreted by the Microsoft Decision and thus started developing location-aware tooling.

5.      From Fall 2016 through Spring 2017, Google worked to develop location-aware tools that would allow the company to retrieve data in response to search warrants without bringing data that was potentially stored outside of the United States into the United States so that it could be preserved pending possible litigation.

6.      On September 27, 2016, SA Delaney contacted Google asking for the status of Google's response to the Warrant, acknowledging the "large volume of information" it requested from Google and requesting a "partial or rolling production" if not all responsive records were available. On September 28, 2016, Google produced some data and documents that it was able to ascertain were stored in the United States in response to the Warrant. In its first production, Google acknowledged its production was only a partial response to the Warrant and that the produced responsive records were retrieved from "Google's U.S. servers," citing the Microsoft Decision. On October 3, 2016, HSI SA Delaney contacted Google to ask whether responsive data were omitted from Google's production because they were stored outside of the United States, what types of responsive data were stored in foreign countries, and in which countries such data were stored. On October 12, 2016, HSI SA Delaney and a Google representative discussed the Warrant. At that time, Google indicated that certain data responsive to the Warrant were stored outside of the United States, and that Google would only produce data stored in the United States in response to the Warrant consistent with its interpretation of the Microsoft Decision.

7.      On November 18, 2016, Google supplemented its production to the Government based on new location-aware tooling it had developed since its first production. On November 21, 2016, Google wrote a letter to the Government providing updates on the production. In particular, Google stated that while it produced "all information it confirmed to be stored in the United States," it did not produce other responsive data whose location Google could not determine and could not confirm to be in the United States, consistent with Google's interpretation of the Microsoft Decision.

8.      The Government informed Google that its incomplete production was not satisfactory, and that if Google did not fully comply, the Government would petition the Court to hold Google in contempt. On December 6, 2016, Google filed a Motion to Quash the Warrant.

9.      On January 13, 2017, the Government filed an Opposition to the Motion to Quash and

moved the Court for a hearing requiring Google to show cause why it was not in contempt of the Court's warrant.  At a hearing on February 21, 2017, the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, heard arguments by the parties.  At the hearing, Magistrate Judge Beeler addressed the issue of preservation of data called for by the Warrant during the period in which Google challenged the Warrant, but stated that the issue was not before her and did not issue a specific order regarding preservation.  On April 19, 2017, Magistrate Judge Beeler denied the Motion to Quash by Google, but also declined to hold a show cause hearing.

10. Following Magistrate Judge Beeler's April 2017 order, Google produced additional responsive data it confirmed to be stored in the United States on May 2, 2017, and noted in its production letter that it had not produced all data sought by the Warrant.  In May 2017, Google continued to work on preserving the remaining data.

11. On May 3, 2017, Google appealed the order of Magistrate Judge Beeler.  The appeal was assigned to the Honorable Richard Seeborg, United States District Judge for the Northern District of California.  Judge Seeborg held a hearing on the matter on August 10, 2017.  In briefing and during the hearing, the Government asked that the Court hold Google in contempt and hold a show cause hearing.  On August 14, 2017, Judge Seeborg upheld the ruling by Magistrate Judge Beeler that Google must comply fully with the Warrant regardless of whether data was overseas or in the United States and noted that "[i]n light of the Second Circuit decision in Microsoft and the absence of relevant Ninth Circuit precedent, Google's diligent, good faith efforts to comply with current law do not warrant contempt at this stage of the proceedings."  Google indicated a desire to appeal Judge Seeborg's August 14, 2017 ruling to the Ninth Circuit to ensure that it did not produce data unless compelled by law, consistent with Google's policies of protecting users' privacy.  To take that appeal would require a contempt order by Judge Seeborg.  Accordingly, Google moved for an order finding it in civil contempt.

12. On October 19, 2017, pursuant to Google's request, Judge Seeborg entered an order of civil contempt against Google so that Google could bring its appeal of Judge Seeborg's August 17, 2017 order that Google must comply fully with the Warrant regardless of whether data was overseas or in the United States.  Judge Seeborg ordered Google to preserve data responsive to the Warrant in his October 19, 2017 order.  Google informed Judge Seeborg that it would preserve responsive data, including such

data stored abroad, during the pendency of the litigation and the appeal to the Ninth Circuit. On November 28, 2017, Google filed an appeal to the United States Court of Appeals for the Ninth Circuit.

13. On March 23, 2018, the United States Congress passed the CLOUD Act, which made clear that a warrant requires disclosure of information held by a provider even if the provider chooses to store data overseas.

14. On July 13, 2018, during the pendency of the appeal, the United States Attorney's Office indicated to Google that the Government intended to investigate whether data responsive to the Warrant had been lost and whether that constituted criminal contempt. Google informed the Government that Google would cooperate in that investigation. On or about August 3, 2018, Google reported to the Government that, due to issues with designing and implementing Google's tools intended to preserve data without repatriating the data, some data had been deleted by a user, and therefore was no longer available to Google. Google likewise informed the Ninth Circuit in connection with the pending appeal.

15. On September 4, 2018, Google formally presented to the Government on what had happened to the data. Google advised that despite having taken steps to preserve data responsive to the Warrant, its preservation had inadvertently not extended to certain files, including 6 photographs deleted by the user subsequent to Judge Seeborg's October 19, 2017 preservation order. Google took actions in May 2017 to preserve potentially responsive data. It was not recognized until after the deletions had occurred that the steps taken in May 2017 did not extend to photographs because tooling that allowed preservation without repatriation had not been developed for photographs as of that time. Google also reported that there were some categories of data for which it could not determine whether data had become unavailable between the service of the Warrant on July 6, 2016 and May 2017, when Google undertook additional efforts to preserve data responsive to the Warrant.

16. Google agrees that its interpretation of the Microsoft Decision, litigation in this matter, and insufficient tooling delayed its final production of data responsive to the Warrant and, combined with inadvertent human error, allowed the user's deletion of information after service of the Warrant, resulting in Google being unable to produce data that had been in its possession and was responsive to the Warrant at the time the Warrant was executed on Google.

17. In a separate 2014 matter, *In Re Search of the Content of Gmail Account and In Re*

*Search of the Content of Account (XXX) XXX-9145 Serviced by Google Voice*, Case No. 13-90556-MISC-LB (N.D. Cal. 2014), Google acknowledged it had not responded completely to legal process related to investigations by the United States Attorney's Office for the Northern District of California and that certain data was lost that would have been responsive to the legal process. In connection with the settlement and agreed resolution of that matter, Google undertook improvements to its program for complying with legal process, including increasing the size of its law enforcement compliance unit, decreasing the average response times for legal process, creating a dedicated email address for law enforcement to request expedited responses, and improving its engineering efforts to respond to legal process.

18. On November 20, 2020, Google met with representatives of the Department of Justice and described the compliance structure around Google's program for complying with legal process propounded by United States law enforcement to ensure timeliness and completeness while respecting the rights of its users and enhancements to that program that Google had voluntarily undertaken and to which Google was committed to continuing to voluntarily undertake. On April 8, 2021, Google provided an update on the program and enhancements.

# ATTACHMENT B
# AGREEMENT

## I. Introduction

Google LLC ("Google" or the "Company") and the United States of America, acting through the United States Department of Justice and the United States Attorney's Office for the Northern District of California (the "Government"), have agreed to resolve all issues in and related to the following matter, *In the Matter of the Search of Content Stored at Premises Controlled by Google Inc. and as Further Described in Attachment A*, Case No. 16-MC-80263-RS, a proceeding initiated on December 6, 2016, in the United States District Court for the Northern District of California, related to a search warrant issued on June 30, 2016, captioned *In the Matter of the Search of Content Related to BTC-E that is Stored at Premises Controlled by Google Inc. and Further Described in Attachment A*, Case No. 16-70816-MISC-LB.

The parties are filing a Stipulation and Joint Request to Close Matter Administratively regarding this matter concurrently with this Agreement. As stated in that Stipulation, the resolution of the matter also includes (1) an agreed upon statement of facts and (2) the Agreement of the parties as contained herein.

Nothing herein limits Google's ability to challenge any future legal process, including on the basis of legal process being overbroad, unconstitutional, or otherwise unlawful, and to advocate on behalf of users of its products and services. Further, nothing herein limits Google's enforcement of its policies safeguarding users' privacy and limiting Government access to user data by producing data only in response to valid legal process and only to the extent authorized by law.

## II. Definitions

The following terms, when used with initial capitalization herein, have the indicated meanings:

A. **Data** – data that is (i) directly generated by Google users or reflects Google user conduct and (ii) is reasonably likely to be material and relevant to typical law enforcement investigations.

B. **Effective Date** – the date on which the following conditions are met: (1) the Agreement is executed by all signatories hereto and (2) the Independent Compliance Professional

ATTACHMENT B AGREEMENT                    1
16-MC-80263-RS

accepts the engagement described in this Agreement.

C. **Enhancements** – enhancements to Google's Legal Process Compliance Program, as described below in section IV.

D. **Legal Process** – process issued by a federal court, federal grand jury, or federal agency that is valid and properly served for obtaining, or causing the preservation of, Data in Google's possession for federal law enforcement purposes, not limited to federal process from, or in support of, a United States Attorney's Office for a particular District or particular component of the United States Department of Justice, and excluding such process authorized by the Foreign Intelligence Surveillance Act, National Security Letters, and 18 U.S.C. § 2709, including: preservation requests issued under 18 U.S.C. § 2703(f), search warrants, court orders issued under 18 U.S.C. § 2703(d), pen-register/trap-and-trace orders, wiretap orders, and subpoenas.

E. **Legal Process Compliance Program** – a program run by Google reasonably designed to achieve timely and complete responses to Legal Process and compliance with applicable laws and policies safeguarding users' privacy and limiting Government access to user data.

F. **Independent Compliance Professional** – an independent third-party professional with expertise in audit and compliance whose functions and responsibilities are elaborated herein. As used herein, the term "independent" means able to perform the responsibilities outlined in this Agreement with integrity, objectivity, and freedom from conflicts of interest, and does not preclude the engagement of a third party solely for having had engagements with Google in other contexts.

G. **Reports** refers collectively to the following three types of reports:

　　i. **Initial Report** – a report, including an addendum reflecting Google's consultation with the Independent Compliance Professional, prepared by Google that Google will issue to the Google Compliance Steering Committee, the Audit and Compliance Committee of the Alphabet Board of Directors, and the Government within 120 calendar days of retaining the Independent Compliance Professional.

    ii.  **Annual Report** – a report, including an addendum reflecting Google's consultation with the Independent Compliance Professional, prepared by Google that Google will issue to the Google Compliance Steering Committee, the Audit and Compliance Committee of the Alphabet Board of Directors, and the Government each year during the term of this Agreement, beginning one year after issuance of the Initial Report.

    iii.  **Final Report** – a report, including an addendum reflecting Google's consultation with the Independent Compliance Professional, prepared by Google that Google will issue at the conclusion of the term of this Agreement to the Google Compliance Steering Committee, the Audit and Compliance Committee of the Alphabet Board of Directors, and the Government.

  H.  **Six-Month Interim Update** – a brief status update that Google will provide to the Government six months before each Annual Report is issued.

**III.**  **Legal Process Compliance Program Generally**

  Google will continue to maintain a Legal Process Compliance Program with the characteristics set forth below. The Legal Process Compliance Program will be reasonably designed to achieve timely and complete compliance with Legal Process. The Legal Process Compliance Program will have the following components and characteristics: data-driven risk assessments; policies and procedures; training and communication tools; systems for reporting compliance concerns; risk-based due diligence of third-party relationships; due diligence on mergers and acquisitions; an autonomous, well-structured and adequately resourced program; support from all levels of Google; processes to promote compliance and ethical behaviors; systems to monitor and regularly review performance; and a properly scoped investigation team.

  To the extent that Google has already begun or completed the steps set forth below as of the time of this Agreement, the efforts will be deemed to satisfy the corresponding obligations under the Agreement.

**IV.**  **Legal Process Compliance Program Enhancements**

  In furtherance of that Legal Process Compliance Program, Google has undertaken, or will

undertake, the following:

    A.    **Continuous Improvements and Testing**

The Legal Process Compliance Program will include processes reasonably designed to achieve a comprehensive understanding of the Data for those of Google's products and services likely to generate Data, including periodic reviews and updates as products and services change over time.

The Legal Process Compliance Program will include monitoring, processes, and quality assurance mechanisms reasonably designed to achieve the proper identification, preservation, and production of Data, including Data associated with a searchable identifier, in order to achieve timely and complete compliance with Legal Process, regardless of Google service used.

    B.    **Timeliness and Completeness**

The Legal Process Compliance Program will include processes and procedures reasonably designed to respond to all Legal Process within the time provided or to communicate to the Court and/or to the proponent of the Legal Process that there will be delay or to otherwise seek legal action to quash, narrow, seek additional time, exclude, or modify the Legal Process. For any instance where a court-ordered or grand jury production deadline is missed, Google will generate a compliance timeliness record capturing the reason for the missed production deadline and when production was made, except for productions made within 14 days of service of the Legal Process, where the court-ordered or grand jury production deadline was less than 14 days from the date of service. These records may be made available to the Independent Compliance Professional and/or to the AUSA or agent responsible for the Legal Process service upon request.

The Legal Process Compliance Program will also include systems for reporting compliance concerns, including, but not limited to, an escalation process to address actual or potential non-compliance with the timeliness or completeness of productions in response to Legal Process. That escalation process will include escalation to the Chief Compliance Officer and the Head of Regulatory Response, Investigations, and Strategy in instances of potential culpability of a Google employee or agent where remediation or disciplinary action may be warranted.

    C.    **Autonomy and Resources**

The Legal Process Compliance Program will be reasonably designed to be autonomous, well-

structured, and adequately resourced and to accomplish the Enhancements set forth in this Agreement, including the following:

    i. **Tooling**

Google will identify the products whose Data are most widely requested by the Government and assess whether relevant Google personnel have adequate and efficient access to that Data for the purpose of responding to Legal Process, thereby developing a list of "priority products" for integration with tooling. The list of priority products may change over time.

Google will integrate the priority products with its Legal Process response tools and will develop and maintain related tooling. Google will have processes reasonably designed to test the tooling for accuracy and completeness and maintain integrations up to date with Data changes.

    ii. **Product Launches**

Google will develop processes reasonably designed to flag new launches for those products and services that will generate Data, which will include how Google will respond to Legal Process for Data associated with those new products and services, and may include integration with tooling.

    iii. **Compliance Staffing**

Google will maintain a Legal Process Compliance Program reasonably designed to achieve adequate staffing levels to support the Legal Process Compliance Program, including ramp-up protocols to allow Google to surge compliance resources as necessary. Google will hire and retain compliance leads embedded in the Legal Process Compliance Program, who will provide a systemic view of operational and regulatory compliance. Google's Chief Compliance Officer and Head of Regulatory Response, Investigations, and Strategy will oversee Google's compliance efforts, including Enhancements to the Legal Process Compliance Program. Google executives will support and promote the Legal Process Compliance Program.

Google's Legal Process Compliance Program will operate with independence and autonomy and will be designed such that the Chief Compliance Officer, Head of Regulatory Response, Investigations, and Strategy, and compliance staff have adequate resources to perform their duties with respect to the Legal Process Compliance Program.

iv. **Dedicated Engineering Resources**

Google will establish a process reasonably designed to effectuate the allocation of adequate engineering resources to support tooling improvement initiatives and to ensure processes and tooling for responding to Legal Process are feasible, accurate, and complete.

D. **Updated Legal Response Policies and Training**

The Legal Process Compliance Program will include processes and procedures reasonably designed to articulate and communicate Google's commitment to compliance. This will include (1) maintaining policies and procedures for responding to Legal Process that are designed to achieve clarity, usability, and improved transparency; (2) reviewing and amending the policies and procedures as necessary to ensure they are readily and robustly understood by Google personnel who are tasked with responding to Legal Process; and (3) developing and maintaining a robust training program for personnel involved in responding to Legal Process. Google will ensure adequate communication and education of all relevant employees to educate them on the Legal Process Compliance Program.

V. **Independent Compliance Professional**

A. **Qualifications and Selection**

Google shall retain an Independent Compliance Professional (as described in section II.F above). The Government may object to Google's proposed Independent Compliance Professional on the grounds of a lack of independence, as defined in section II.F, or a lack of the requisite expertise needed to serve effectively in the role. If the parties are unable to agree on an acceptable retained Independent Compliance Professional, they may submit the matter to the Court for resolution.

The Independent Compliance Professional's functions will be in place for a three-year period from the Effective Date of this Agreement, subject to one two-year extension as set forth in section VII below.

If the Independent Compliance Professional resigns or is otherwise unable to fulfill its obligations as set forth herein, Google will retain a replacement Independent Compliance Professional to serve the remainder of the three-year term of the Independent Compliance Professional function.

B. **Roles and Responsibilities**

The Independent Compliance Professional will verify the accuracy of assertions in all Reports

and evaluate Google's assessment of its compliance with the Enhancements to the Legal Process Compliance Program as set forth above in section IV.

C. **No Access to Information or Data of Google Users**

The Independent Compliance Professional, and any agents or employees thereof, will have no ability to access or review any user data on any Google services or platforms, and will not direct or recommend the disclosure of any such data to the Government or anyone else for any purpose.

Google will cooperate with the Independent Compliance Professional to allow the Independent Compliance Professional to fulfill its functions by providing the information necessary to assess the accuracy of assertions in all Reports, to the extent not privileged or subject to non-disclosure obligations.

The Independent Compliance Professional will maintain in strictest confidence and inviolate the confidence, at every peril to itself, all non-public information, documents, and records it receives from Google. The Independent Compliance Professional will take steps to ensure that any of its agents or employees will similarly maintain inviolate such confidentiality at all peril to themselves. Within thirty days after the end of the Independent Compliance Professional's term, the Independent Compliance Professional will return anything obtained from Google or certify that such information has been destroyed.

To the extent that the Independent Compliance Professional seeks access to information that is privileged or attorney work product, Google will use its best efforts to provide the Independent Compliance Professional with comparable information without compromising the asserted privilege or protection.

Nothing herein shall be read to require the Independent Compliance Professional to perform its duties in a manner that would conflict with the AICPA Code of Professional Conduct.

D. **Scheduling, Staffing, and Compensation**

The Independent Compliance Professional may include personnel with appropriate professional qualifications who are reasonably necessary to assist in the proper discharge of the Independent Compliance Professional's functions, as specified herein. Google may offer suggestions on qualified professional personnel to assist the Independent Compliance Professional, and the Independent

Compliance Professional will interview any such suggested personnel to assess their qualifications and any potential conflicts of interest. Google may perform routine conflict checks on individuals or entities the Independent Compliance Professional proposes to engage, and within two weeks of a proposed engagement, Google will advise the Independent Compliance Professional if any conflicts exist.

Google will pay reasonable compensation and expenses of the Independent Compliance Professional, and of persons hired by the Independent Compliance Professional pursuant to its authority hereunder. The Independent Compliance Professional, and any persons hired by the Independent Compliance Professional, will be compensated in accordance with their hourly rates or a reasonable fee based on applicable market rates.

Google agrees that it will not employ or retain the Independent Compliance Professional, or professionals retained by the Independent Compliance Professional during the term of this Agreement, except in an independent third-party professional role, for a period of at least two years from the date of termination of the term of this Agreement.

The Independent Compliance Professional, Google, and the Government shall meet annually to discuss Google's Legal Process Compliance Program.

E. **Only Express Authority**

The Independent Compliance Professional has no authority not expressly provided herein and has no authority to supplant any law of the United States or any State, or the specifics of any order by any court.

**VI. Reports and Updates**

Google will prepare an Initial Report, Annual Reports, and a Final Report that describe its Legal Process Compliance Program and Enhancements. The Reports will include the specific subject matters noted in this Agreement, including those described in section IV above.

Google will consult with the Independent Compliance Professional regarding Google's assessment of the Enhancements to Google's Legal Process Compliance Program. Each Report will include an update on Google's Legal Process Compliance Program and Enhancements and Google's assessment of its compliance with the Enhancements to the Legal Process Compliance Program. Each Report will include an addendum reflecting consultation with the Independent Compliance Professional,

the Independent Compliance Professional's evaluation regarding Google's assessment of its compliance with the Enhancements to the Legal Process Compliance Program, and a certification by the Independent Compliance Professional regarding the accuracy of the assertions in the Report.

The Government agrees that all Reports are non-public and contain and/or reflect Google trade secrets and commercial information, and agrees to maintain them private and confidential. Nothing herein precludes providing a Report to the Court; provided, however, that the parties agree that any Reports provided to the Court will be designated "Highly Confidential," and if filed with the Court, will be placed conditionally under seal in accordance with Local Rule 79-5.

Google will prepare Six-Month Interim Updates, which will be submitted to the Government six months prior to each Annual Report. The Six-Month Interim Updates will include a brief update on the status of Enhancements described in previous Reports. The Government agrees that all Six-Month Interim Updates are non-public and contain and/or reflect Google trade secrets and commercial information, and agrees to maintain them private and confidential.

The Initial Report will be drafted and issued within 120 days of the retention of the Independent Compliance Professional. The Annual Report will be drafted and issued in 12-month intervals following the issuance of the Initial Report. The Final Report will be submitted on or about November 1, 2025.

**VII.    Evaluation of Agreement**

Within 45 days of the submission of the Final Report, if the Government determines that Google has not substantially complied with the terms of the Agreement, it may seek a single extension of the terms of the Agreement for one two-year term, which will extend the term of the Independent Compliance Professional and Google's obligation to prepare Annual Reports and Six-Month Interim Updates. The parties agree that this single two-year extension is the Government's exclusive remedy for alleged non-compliance with this Agreement by Google. Nothing herein limits the rights of any U.S. Attorney's Office, component of the U.S. Department of Justice, or other federal government agency to enforce compliance, in any appropriate jurisdiction, with legal process served on Google during the Agreement term. If Google disagrees that it has not substantially complied with the Agreement and that an extension is therefore unwarranted, it may seek resolution of that dispute by the Court.

## VIII. Limitations

This Agreement is not an admission of liability or wrongdoing by Google, nor a concession by the Government regarding the merits of its ability to seek remedies in this matter.

The requirements of this Agreement are in addition to all other applicable requirements of law. Nothing herein operates as a permit under federal, state, or local regulations, and Google remains responsible for complying with all applicable federal, state, and local laws, orders, and permits. Google may not claim that compliance with this Agreement is a defense to any action commenced under applicable federal, state, or local law other than the action resolved through this Agreement. The Government does not warrant that Google's compliance with this Agreement constitutes compliance with other applicable legal requirements.

## IX. Release

The Government agrees that it will not further investigate, prosecute, or seek any relief other than as described herein for conduct by Google, including its directors, officers, employees, agents, attorneys, and affiliates, in processing, litigating, responding to, or failing to respond to, legal process in the referenced matter of In the Matter of the Search of Content Stored at Premises Controlled by Google Inc. and as Further Described in Attachment A, Case No. 16-MC-80263-RS or in the similarly situated investigations disclosed by Google to the Government as of the Effective Date in which data was or may have been lost.

_[signature]_  
LEE-ANNE MULHOLLAND  
Vice President, Alphabet Regulatory Response, Investigations & Strategy  
Google LLC

October 21, 2022  
DATE

_[signature]_  
KENNETH A. POLITE, JR.  
Assistant Attorney General  
U.S. Department of Justice, Criminal Division

10/24/2022  
DATE

_Stephanie M. Hinds_  
STEPHANIE M. HINDS  
United States Attorney, Northern District of California

October 24, 2022  
DATE

ATTACHMENT B AGREEMENT  
16-MC-80263-RS

10